SOUTHWESTERN BELL TELEPHONE
COMPANY, Appellant,

v.

GENERAL CABLE INDUSTRIES, INC.,
f/k/a General Cable Company, a Unit of
Penn Central Corporation, Appellee/Appellant,

v.

DAVIS FLEET MAINTENANCE,
INC., Appellee.

No. 08–97–00047–CV.

Court of Appeals of Texas,
El Paso.

March 26, 1998.

Jeffrey S. Alley, Frank Feuille, IV, Scott, Hulse, Marshall, Feuille, Finger, & Thurmond, El Paso, Walter O. Theiss, Dallas, for Appellant.

Wayne E. Windle, Dunley, Dudley, Windle & Stevens Galatzan, El Paso, for Butler Fleet.

Darryl Vereen, Steven L. Hughes, Mounce, Green, Myers, Safi & Galatzan, for Davis Fleet.

Jeffrey T. Lucky, Hicks & Lucky, El Paso, Daniel J. Donnellon, William A. Posey, Keating, Muething & Klekamp, Cincinnati, OH, for General Cable.

Before BARAJAS, C.J., and LARSEN and McCLURE, JJ.

## OPINION

McCLURE, Justice.

Southwestern Bell Telephone Company, Appellant, (SWBT) appeals from a summary judgment rendered in favor of General Cable Industries, Inc., Appellee (General Cable). General Cable, as cross-appellant, appeals from a summary judgment granted in favor of cross-appellee, Davis Fleet Maintenance, Inc. (Davis Fleet). We reverse summary judgment granted in favor of General Cable; we affirm summary judgment granted in favor of Davis Fleet.

## FACTUAL AND PROCEDURAL SUMMARY

On January 20, 1995, a device known as a braking bar fell from a SWBT truck traveling on Interstate 10 in El Paso. Mark Womack, a driver of another vehicle, suffered severe and permanent injuries when he lost control of his vehicle after it struck the braking bar. On February 22, 1995, Womack filed a negligence suit against SWBT and one of its employees. The following procedural

---

1. General Cable also filed a third-party petition against Butler Fleet Services alleging that it negligently maintained the vehicle. General Cable

events are pertinent to resolution of the issues presented by this appeal:

■ 5/22/95    Case set for jury trial on November 6, 1995.

■ 5/25/95    Case referred for mediation scheduled to be held on September 22, 1995.

■ 6/12/95    Upon obtaining leave of court, SWBT filed a third-party petition against General Cable for contribution, alleging a theory of products liability.

■ 7/26/95    General Cable filed its answer.

■ 8/95    General Cable sought continuance of mediation and trial, but it agreed to allow mediation to proceed in exchange for Womack's agreement to postpone the trial if he failed to reach a settlement with SWBT at mediation.

■ 9/22/95    Mediation attended by Womack, SWBT, and General Cable.

■ 10/05/95    Settlement agreement reached between Womack, SWBT, and General Cable whereby SWBT agreed to pay $1.675 million to Womack while SWBT reserved its right to seek contribution from General Cable and General Cable reserved its defenses to the contribution claim; Womack released both SWBT and General Cable.

■ 5/03/96    Womack non-suited SWBT.

■ 5/07/96    Upon obtaining leave of court, General Cable filed a third-party petition against Davis Fleet, alleging that it negligently maintained the SWBT vehicle.[1]

■ 6/17/96    Davis Fleet filed special exceptions.

■ 9/20/96    General Cable responded to Davis Fleet's special exceptions by alleging that it did not settle with Womack and therefore its contribution claim was not prohibited; alternatively, General Cable moved for summary judgment as to SWBT's contribution claim, alleging that if General Cable is a settling defendant, it is immune from any contribution claims.

■ 10/11/96    Trial court sustained special exception of Davis Fleet that General Cable failed to state a cause of action and ordered it to replead within 15 days.

■ 10/16/96    Davis Fleet filed motion to strike for failure to replead; it also moved for summary judgment as to General Cable's claim against it for contribution, alleging that General Cable's claim for contribution is barred by the settlement with Womack and the release of both General Cable and SWBT.

■ 1/19/97    Womack filed a separate suit against General Cable.

■ 1/20/97    Trial court granted all motions for summary judgment and entered judgment in favor of General Cable with respect to the suit by SWBT, and in favor of Davis Fleet with respect to the suit by General Cable against it.

## THE SETTLEMENT AGREEMENT

The agreement is entitled "Settlement agreement between Southwestern Bell Telephone Company, American Premier Underwriters, Inc., General Cable Company, a division of the Penn Central Corporation, Mobile

---

originally appealed from the summary judgment granted in favor of Butler Fleet, but it later dismissed that portion of the appeal.

Tool International, Inc. and Mark Womack with rights reserved to continue certain claims." It recites that the parties entered into the agreement with respect to the disputes between SWBT, General Cable, and Womack arising out of a suit in which Womack alleges that SWBT is responsible for his injuries while SWBT alleges that it is entitled to contribution from General Cable. Both SWBT and General Cable agreed that Womack's claim is of a serious nature and continued litigation would only increase the parties' expense and exposure to additional damages from the suit. The parties further agreed as follows:

- SWBT would pay $1.675 million to Womack in satisfaction of all of Womack's claims *arising out of the accident and the suit in question.*

- SWBT would continue its third party complaint against General Cable with SWBT to remain as plaintiff and General Cable as defendant. The parties agreed to continue the trial date, to establish a new pretrial order, and to cooperate in discovery.

- Notwithstanding any law to the contrary, General Cable agreed that SWBT retained its legal rights to seek contribution or indemnity from General Cable for damages it sustained by making the $1.675 million payment to Womack. General Cable agreed that SWBT did not waive, relinquish, or lose its right to assert the claim for contribution or indemnity by its payment of the $1.675 million or by obtaining a release from Womack.

- Notwithstanding any law to the contrary, SWBT agreed that General Cable retained its right to assert any and all defenses or counterclaims to SWBT's third-party complaint against it except for those defenses expressly waived by the agreement. SWBT specifically agreed that General Cable retained the right to assert that SWBT's own contributory or comparative negligence caused the accident.

- Womack agreed that upon receipt of the $1.675 million payment, he released SWBT from any and all claims arising out of the accident.

- Womack agreed that, "[a]s part of SWBT's payment" of the $1.675 million, he released General Cable from all claims arising out of the accident. However, the parties agreed that Womack's release of General Cable did not have any effect on and is not to be considered as a defense to SWBT's contribution claim against General Cable.

- General Cable agreed "that in consideration of SWBT advancing the payment of the aforementioned claim of Mark Womack," SWBT could seek, as an additional element of damage in its contribution claim against General Cable, interest on any sum SWBT advanced in excess of what it may actually owe towards satisfaction of the Womack claim.

- SWBT and General Cable agreed that settlement in the sum of $1.675 million is reasonable and that neither party would contest the reasonableness of that amount in any future proceeding. They also agreed that SWBT would not seek any sum in excess of that amount and interest.

- The parties agreed that venue of the existing action would remain in El Paso County unless the parties later agreed otherwise in writing.

- The agreement is not an admission of liability on the part of SWBT to Womack or on the part of General Cable to SWBT or Womack.

- The releases by Womack of SWBT and General Cable extend to all unknown, unforeseen, unanticipated, and unexpected claims, including those not disclosed or known to exist. The parties expressly waived any law to the contrary.

- The parties agreed and warranted that they entered into the agreement in reliance upon their own judgment and had not been influenced by any representations, statements, inducements, or promises not contained in the agreement. They each agreed that they had full knowledge of the terms, conditions, and effects of the agreement and had voluntarily entered into the agreement. Finally, the agreement recites that it constitutes the entire agreement and understanding between the parties.

## SWBT'S APPEAL

By two points of error, SWBT challenges the summary judgment granted in favor of General Cable. Although it raises several arguments, SWBT essentially maintains three reasons the trial court erred in granting summary judgment: (1) the settlement agreement and its contractual contribution claim do not violate the rule stated in *International Proteins Corp. v. Ralston–Purina Co.,* and *Beech Aircraft Corp. v. Jinkins* [2] that a settling defendant may not preserve its contribution rights against non-settling defendants; (2) a settlement agreement which creates a contractual claim for contribution between settling defendants is not contrary to public policy but rather advances the interests of the plaintiff and the public; and (3) SWBT's contractual right of contribution is not prohibited by any of the provisions of the Texas proportionate responsibility statute, TEX.CIV.PRAC. & REM.CODE ANN. § 33.001 *et seq.* (Vernon 1997). Because we agree with each of the arguments advanced by SWBT, we conclude the trial court erred

---

2. *International Proteins Corp. v. Ralston–Purina Co.,* 744 S.W.2d 932, 933–34 (Tex.1988); *Beech Aircraft Corp. v. Jinkins,* 739 S.W.2d 19, 22 (Tex. 1987)

in granting summary judgment against SWBT.

### The Standard of Review

The standard of review on appeal of a summary judgment is whether the successful movant at the trial level carried its burden of showing that there is no genuine issue of material fact and that judgment should be granted as a matter of law. *Lear Siegler, Inc. v. Perez,* 819 S.W.2d 470, 471 (Tex.1991); *Nixon v. Mr. Property Management Co., Inc.,* 690 S.W.2d 546, 548 (Tex.1985). Thus, the question is not whether the summary judgment proof raises fact issues as to required elements of the movant's cause or claim, but whether the summary judgment proof establishes, as a matter of law, that there is no genuine issue of material fact as to one or more elements of the movant's cause or claim. *Gibbs v. General Motors Corp.,* 450 S.W.2d 827, 828 (Tex.1970). In resolving the issue of whether the movant has carried this burden, all evidence favorable to the non-movant must be taken as true and all reasonable inferences, including any doubts, must be resolved in the non-movant's favor. *Nixon,* 690 S.W.2d at 548–49; *Stoker v. Furr's, Inc.,* 813 S.W.2d 719, 721 (Tex. App.—El Paso 1991, writ denied). Where the defendants are the movants and they submit summary judgment evidence disproving at least one essential element of each of plaintiff's causes of action, then summary judgment should be granted. *Perez,* 819 S.W.2d at 471; *Bradley v. Quality Service Tank Lines,* 659 S.W.2d 33, 34 (Tex.1983). Alternatively, the defendant-movant must conclusively establish each essential element of an affirmative defense. *Zep Mfg. Co. v. Harthcock,* 824 S.W.2d 654, 657 (Tex.App.— Dallas 1992, no writ); *Traylor v. Unitedbank Orange,* 675 S.W.2d 802, 804 (Tex.App.— Beaumont 1984, writ ref'd n.r.e.). When the summary judgment does not state the grounds upon which it was granted, the judgment will be affirmed if any of the theories advanced in the summary judgment motion are meritorious. *State Farm Fire & Cas. Co. v. S.S. & G.W.,* 858 S.W.2d 374, 380 (Tex.1993); *Rogers v. Ricane Enterprises, Inc.,* 772 S.W.2d 76, 79 (Tex.1989).

### The International Proteins–Jinkins Rule and Sections 33.014 and 33.015 do not Prohibit the Settlement Agreement

The first issue is whether SWBT's contribution claim is barred by the rule stated in *International Proteins* and *Jinkins* or by certain provisions of Chapter 33 of the Civil Practice and Remedies Code so that the settlement agreement is void. In resolving this issue, an understanding of the facts involved in both *International Proteins* and *Jinkins* is helpful. We begin with *Jinkins.*

In *Jinkins,* Weiner and Jinkins were injured in the crash of Jinkins' private plane. *Jinkins,* 739 S.W.2d at 20. Weiner and Jinkins filed separate suits, later consolidated, against three defendants, Beech Aircraft, Teledyne, and Houston Beechcraft. *Id.* The defendants each filed counterclaims against pilot Jinkins, alleging negligence. *Id.* The defendants settled Weiner's claims and obtained a release. *Id.* Even though Weiner had not sued Jinkins, the settlement agreement also released Jinkins from liability to Weiner and expressed the intent of the three defendants to seek contribution from Jinkins. *Id.* After Weiner dismissed his claims with prejudice, the defendants amended their counterclaims against Jinkins to include the contribution claims purportedly reserved in the settlement agreement with Weiner. *Id.* Jinkins moved for summary judgment alleging that the settlement agreement which released the three defendants extinguished their respective rights to contribution. The trial court granted summary judgment and severed the contribution claims. The court of appeals affirmed the judgment. *Beech Aircraft Corporation v. Jinkins,* 698 S.W.2d 722 (Tex.App.—Houston [1st Dist.] 1985).

The Supreme Court framed the sole issue before it as "whether a defendant, who settles a plaintiff's entire claim, may preserve a right to contribution from an alleged joint tortfeasor *who does not participate in the settlement.*" [Emphasis added.] *Jinkins,* 739 S.W.2d at 19. It answered the question in the negative for two reasons. First, it found that Sections 33.014 and 33.015 of the former comparative negligence statute do not create a contribution right for a settling de-

fendant and it declined to judicially create such a right. *Id.* at 21. Second, under the common law scheme adopted in *Duncan v. Cessna Aircraft Co.,* 665 S.W.2d 414 (Tex. 1984), a defendant can settle only its proportionate share of a common liability and may not settle the plaintiff's entire claim as the three defendants attempted to do. *Jinkins,* 739 S.W.2d at 21–22.[3] Consequently, a settling defendant who is jointly responsible for personal injuries to a common plaintiff may not preserve contribution rights under either the common law or the comparative negligence statute by attempting to settle the plaintiff's entire claim. *Id.* at 22.

The Supreme Court addressed the same question in *International Proteins,* albeit under slightly different facts. Purina sold contaminated chicken feed to IPC for resale; IPC, in turn, sold the contaminated feed to Barkley who filed a negligence and products liability suit against both IPC and Purina. *International Proteins,* 744 S.W.2d at 932. Purina and IPC filed cross-actions against one another. Barkley settled with Purina and agreed to indemnify Purina from any further liability. *Id.* The settlement agreement contained an express reservation by Purina of any potential right to contribution or indemnity it might have against IPC. *Id.* Purina also obtained an assignment of Barkley's original cause of action against IPC. *Id.* Following the settlement, Purina prosecuted Barkley's claims against IPC. *International Proteins,* 744 S.W.2d at 932. At trial, the court submitted the case as though the absent Barkley had participated in the trial. *Id.* at 934. A jury found both IPC and Purina liable under the negligence and products liability claims and apportioned liability 70 percent against Purina and 30 percent against IPC, but it found zero damages. *Id.* In the judgment, the trial court aligned Purina as the plaintiff and IPC as the defendant and rendered judgment that Purina take

nothing. *Id.* Purina appealed. The court of appeals found that the settling defendant Purina could pursue the original claims in the plaintiff's name. *Ralston Purina Company v. Barkley Feed & Seed Co.,Inc.,* 722 S.W.2d 431 (Tex.App.—Houston [1st Dist.] 1986). It further found the record established damages in the sum of $319,987.17 as a matter of law, and rendered judgment in favor of Barkley and against IPC for $95,996.16 (30 percent of $319,987.17). Although judgment was rendered in favor of Barkley, the Supreme Court noted that it was intended for the benefit of Purina as the assignee of Barkley's claim. Adhering to *Jinkins,* the Supreme Court held that a settling defendant may not preserve contribution rights *against non-settling defendants* by taking an assignment of the plaintiff's cause of action. [Emphasis added.] *International Proteins,* 744 S.W.2d at 932.

■ In our view, SWBT correctly contends that the rule of *International Proteins* and *Jinkins* and its underlying public policy are inapplicable here. Unlike the situation in those cases, all of the parties to the original suit joined in the settlement agreement.[4] While a single joint tortfeasor certainly may not settle the plaintiff's entire claim, all of the joint tortfeasors may, as in this case, settle their proportionate shares of liability and in so doing legitimately settle the plaintiff's entire claim. Thus, we do not have before us an ineffectual attempt by a defendant to settle more than its proportionate share of liability as in *International Proteins* and *Jinkins.*

This case is distinguishable for a second significant reason. SWBT is not pursuing a contribution claim against a non-settling defendant. Rather, it has filed its contribution claim against another settling defendant pursuant to an agreement between those two parties.[5] This distinction removes this case

---

3. *Jinkins* discussed the former comparative negligence statute which applies only in pure negligence cases filed before September 2, 1987. *See Stewart Title Guar. Co. v. Sterling,* 822 S.W.2d 1, 5 (Tex.1991). The contribution scheme at issue in this case is the proportionate responsibility statute found in Chapter 33 of the Civil Practice and Remedies Code which merges the compara-

tive negligence statute with the holdings of *Duncan.* *See Sterling,* 822 S.W.2d at 5.

4. Davis Fleet was not made a party to the suit by General Cable until long after the settlement agreement had been executed.

5. For reasons stated later in this opinion, we conclude that General Cable is a settling party.

from the rule of *International Proteins* and *Jinkins.*

■ Contrary to the view of General Cable, the Supreme Court did not hold in *International Proteins* or *Jinkins* that former Sections 33.014 and 33.015 expressly *prohibit* a settling party from pursuing a contribution claim against another defendant. Instead, the Court found that these sections do not *create* such a right. This is not a mere semantical distinction. Although a settling defendant does not have a statutorily-created right to seek contribution, neither of the former sections prohibited the parties from creating a right to contribution by settlement agreement. Likewise, while we find that the present versions of Sections 33.014 and 33.015 do not create a right of contribution in a settling party, they also do not prohibit the contractual contribution claim agreed to by SWBT and General Cable.

■ We further agree with SWBT that the settlement agreement in this case does not violate public policy or unfairly prejudice General Cable. The Court articulated in *Jinkins* the public policy for its holding:

> We see no advantage in allowing defendants responsible for the plaintiff's injuries a right to, in effect, buy the plaintiff's claims and prosecute the other jointly responsible parties. It is not apparent that such settlements will result in any significant savings of time or resources. We can, however, envision that the settling defendant's unusual posture as surrogate plaintiff, co-defendant and cross-plaintiff will confuse a jury and possibly prejudice the remaining parties.

*Jinkins*, 739 S.W.2d at 22.

These concerns do not exist when two defendants settle a plaintiff's entire claim while reserving their right to litigate their respective responsibility for the established damages. First, the plaintiff has resolved his entire claim and has obtained his recovery without the necessity of waiting for the defendants to litigate not only the damages

issues but also their proportional responsibility. In this case, the plaintiff settled his case with the defendants only nine months after his injuries occurred. Such a speedy and efficient resolution of the plaintiff's case certainly results in a significant savings of both time and resources to all parties and to the judicial system. This result is consistent with public policy which favors settlements and the efficient administration of justice. *Elbaor v. Smith,* 845 S.W.2d 240, 250 (Tex. 1992); *Dunn v. Canadian Oil and Gas Serv., Inc.,* 908 S.W.2d 323, 324 (Tex.App.—El Paso 1995, no writ); Tex.R.Civ.P. 1. Second, this arrangement does not complicate the issues in a subsequent trial—it streamlines them by entirely removing the issues of damages. The only remaining issues are who, as between SWBT and General Cable, is at fault in causing the plaintiff's damages and in what proportion. *See e.g., Lyondell Petrochemical Co. v. Fluor Daniel, Inc.,* 888 S.W.2d 547, 550 n. 2 (Tex.App.—Houston [1st Dist.] 1994, writ denied)(setting forth sole issue submitted to jury in contractual contribution suit where defendant stipulated that amount paid by settling defendant was reasonable). This does not present the potentially confusing situation where one defendant has obtained an assignment of the plaintiff's claim and prosecutes it as surrogate plaintiff against the remaining defendant. General Cable points to Womack's recently filed suit against it as evidence that the issues are not streamlined and that it will be unfairly prejudiced if SWBT is permitted to pursue its contribution claim because it will be forced to defend two lawsuits. This predicament has not been created by the settlement agreement nor is it the fault of SWBT or the judicial system—it is the direct product of General Cable's attempt to avoid the settlement agreement. By taking the position that the settlement agreement it voluntarily entered into is void or that it simply does not constitute a settlement between General Cable and Womack since it did not pay him any money, General Cable plainly invited Womack to sue it.[6] We will not hold

---

6. That General Cable invited Womack's suit by the position it has taken in the instant case is evidenced by the following allegation in Womack's petition: "In October 1995, Womack set-

tled his claim against SWBT and released SWBT. Any claim by General Cable that it too was released in October of 1995 fails due to a lack of consideration and an admission in open Court in

that General Cable's unnecessary complication of the lawsuit is unfairly prejudicial to General Cable or that it somehow renders the settlement agreement contrary to public policy. For all of these reasons, we hold that the settlement agreement does not violate the *International Proteins–Jinkins* rule nor is it prohibited by Sections 33.014 and 33.015.

### Section 33.015(d) Does Not Provide Immunity to General Cable

We also find no merit in General Cable's argument that, if it is determined to be a "settling person" within the meaning of Section 33.011(5) of the Civil Practice and Remedies Code, it is entitled to immunity from this contribution claim by virtue of Section 33.015(d) of the Civil Practice and Remedies Code.[7] Section 33.015(d) provides that "No defendant has a right of contribution against any settling person." TEX.CIV.PRAC. & REM. CODE ANN. § 33.015(d). Both "defendant" and "settling person" are defined by Section 33.011:

> (2) 'Defendant' includes any party from whom a claimant[8] seeks recovery of damages pursuant to the provisions of Section 33.001 at the time of the submission of the case to the trier of fact.

> (5) 'Settling person' means a person who at the time of submission has paid or promised to pay money or anything of monetary value to a claimant at any time in consideration of potential liability pursuant to the provisions of Section 33.001 with respect to the personal injury, property damage, death, or other harm for which recovery of damages is sought.

County Court at Law No. 2 during a hearing in cause number 95–2060 to the effect that Womack was free to sue General Cable for their conduct contributing to the accident on January 20, 1995."

7. General Cable took alternative positions in the trial court. In resisting Davis Fleet's special exceptions, General Cable argued strenuously that it is not a "settling person" within the meaning of Section 33.011(5) of the Civil Practice and Remedies Code because it paid no money to Womack, and therefore, its claim for contribution against Davis Fleet is not barred by *International Proteins* and *Jinkins*. Alternatively, it maintained that even if it is determined to be a

TEX.CIV.PRAC. & REM.CODE ANN. § 33.011(2) and (5).

Contrary to General Cable's view of the statute, Section 33.015(d) does not protect a "settling person" from all contribution claims. Instead, it only provides a "settling person" with immunity from a contribution claim by a party who satisfies the definition of "defendant." General Cable suggests that the rule of *International Proteins* and *Jinkins* is based on this provision. In our view, however, Section 33.015(d) is the converse of the *International Proteins–Jinkins* rule. While *International Proteins* and *Jinkins* hold that a settling defendant may not pursue a contribution claim against a non-settling defendant, thereby providing protection to non-settling defendants, Section 33.015(d) protects a settling person from a contribution claim by a non-settling defendant, or at least by a defendant who has not settled the plaintiff's entire claim against him. *See C & H Nationwide, Inc. v. Thompson,* 903 S.W.2d 315 (Tex.1994)(holding that a defendant who enters only a partial settlement with the plaintiff is not subject to a contribution claim with respect to that part, but remains subject to contribution with respect to parts of plaintiff's claims that were not settled).

In order for General Cable to be entitled to immunity under Section 33.015(d), the summary judgment evidence must demonstrate not only that General Cable is a "settling person" but also that SWBT is a "defendant." General Cable agreed that damages in the sum of $1.675 million were reasonable and it further agreed that SWBT would "advance" the payment of this sum to Womack. In exchange for its agreement to this pay-

"settling person" under Section 33.011(5), then it is entitled to summary judgment with respect to SWBT's suit because it is immune from a contribution claim by virtue of Section 33.015(d) of the Civil Practice and Remedies Code. General Cable offered no summary judgment evidence that it is a "settling person," and in fact, it vigorously advocated the contrary position.

8. "Claimant" means a party seeking recovery of damages pursuant to the provisions of Section 33.001, including a plaintiff, counterclaimant, cross-claimant, or third-party plaintiff seeking recovery of damages. TEX.CIV.PRAC. & REM.CODE ANN. § 33.011(1).

ment of money to Womack, General Cable limited its liability to no more than $1.675 million, excluding interest, while retaining the right to assert that SWBT's own contributory or comparative negligence caused the accident, and it obtained a complete release from Womack. Nothing in Section 33.011(5) requires that a defendant personally and directly pay or promise to pay money or anything of value to the claimant. Likewise, this definition does not prohibit the payment of money by one defendant or party on behalf of another. By virtue of the concessions and promises General Cable made to SWBT in the settlement agreement, SWBT agreed to pay $1.675 million to Womack in settlement of his claims and potential claims against both defendants. We conclude that the payment of money by SWBT on its own behalf and on behalf of General Cable in consideration of the potential liability of both defendants is a payment of money by General Cable. Because it "paid" money to Womack in consideration of potential liability, General Cable is a "settling person."

The summary judgment evidence does not, however, establish that SWBT is a "defendant." SWBT paid $1.675 million to Womack in settlement of his entire claim against SWBT and General Cable and Womack non-suited his claim against SWBT. By virtue of that non-suit, the "claimant" Womack is not seeking recovery of damages from SWBT. Under these facts, SWBT is a "settling person," not a "defendant." Consequently, General Cable failed to establish that it is entitled to immunity from SWBT's contribution claim under Section 33.015(d).

Because the contractual contribution claim created by the settlement agreement is not prohibited under the rule of *International Proteins* and *Jinkins* or Sections 33.014 and 33.015, and because General Cable is not entitled to immunity under Section 33.015(d), the trial court erred in granting summary judgment with respect to SWBT's claim against General Cable. Points of Error Nos. One and Two are sustained. The summary judgment rendered in favor of General Cable is reversed and this cause is remanded for trial in connection with SWBT's contribution claim against General Cable.

## GENERAL CABLE'S APPEAL

By three related points of error, General Cable challenges the summary judgment granted in favor of Davis Fleet. General Cable argues that because it did not directly make the payment of the $1.675 million to Womack, it did not enter into a settlement with Womack and it is not a "settling person" within the meaning of Section 33.011(5) of the Civil Practice and Remedies Code. Thus, it reasons that the *International Proteins–Jinkins* rule and the proportionate responsibility statute does not bar its contribution claim. We have already determined that General Cable satisfies the definition of "settling person." The term "settlement," as used in the comparative responsibility law, means money or anything of value paid or promised to a claimant in consideration of potential liability. *Thompson,* 903 S.W.2d at 320. Like the definition of "settling person," nothing in the definition of "settlement" requires that a defendant personally and directly pay or promise to pay money or anything of value to the claimant nor does it prohibit the payment of money by one defendant or party on behalf of another. For the reasons we have already stated, that is exactly what occurred here. Accordingly, the trial court correctly determined that General Cable, as a settling party, is not entitled to pursue its contribution claim against the non-settling defendant, Davis Fleet. *International Proteins,* 744 S.W.2d at 934; *Jinkins,* 739 S.W.2d at 22. In light of this holding, we need not address the remaining arguments of the parties. Points of Error Nos One, Two, and Three are overruled and the summary judgment rendered in favor of Davis Fleet is affirmed.