Sireesha JANGA, M.D. and Richard Torres, M.D., Appellants,

v.

Thomas A. COLOMBRITO and Phorsha Colombrito, Appellees.

No. 05–10–00408–CV.

Court of Appeals of Texas, Dallas.

Dec. 12, 2011.

Jadd F. Masso, P. Michael Jung, Joseph A. Turano, Strassburger & Price, LLP, Diana L. Faust, R. Brent Cooper, Michelle E. Robberson, Cooper & Scully, P.C., Dallas, TX, Susan Cassidy Cooley, Schell, Mitchel & Cooley LLP, Addison, TX, for Appellants.

Jack E. McGehee, Hsien Chun Chang, Stephen Anthony Barnes, Benjamin T. Landgraf, McGehee Chang Barnes, Houston, TX, for Appellees.

Before Justices FITZGERALD, FRANCIS, and LANG–MIERS.

## OPINION

Opinion By Justice FITZGERALD.

Appellees Thomas and Phorsha Colombrito sued appellants, Doctors Sireesha Janga and Richard Torres, alleging negligence in their treatment of Thomas. A jury found appellants were negligent in their treatment and awarded appellees more than $22 million. After applying settlement credits and statutory caps, the trial court's January 4, 2010 final judgment awarded the Colombritos $504,291.94 from Torres and $10,125,725, jointly and severally, from Janga. In addition, the judgment awarded $250,000 in non-economic damages from Janga and Torres. Appellants raise three issues on appeal, alleging charge error and factual insufficiency of the evidence supporting the jury's finding of liability and award of damages for loss of earning capacity. We conclude the trial court's jury charge contained reversible error, and we remand this cause for new trial.

### BACKGROUND

Thomas Colombrito arrived at the emergency room at Dallas Regional Medical Center (the "Hospital") early on the morning of Friday, January 11, 2008. Colombrito complained, among other symptoms, of a headache with severe pain and a stiff neck. Dr. Sireesha Janga became Colombrito's treating physician, and she ordered a number of tests in an effort to identify Colombrito's problem. As part of her plan of treatment, Janga prescribed aspirin and

Lovenox—which is a blood thinner—to be administered to Colombrito twice daily. The first dose of Lovenox was given to him at noon on Friday; the next was given at midnight. Janga also recommended Colombrito undergo a lumbar puncture because she was concerned about the possibility of meningitis. The procedure was performed by Dr. Lutfi Basatneh, a neurologist, on Saturday afternoon. However, Colombrito was given a dose of Lovenox at noon on Saturday, before the procedure; he was given another dose at midnight, after the procedure. There is no dispute that Lovenox is contraindicated before and after a lumbar puncture because it can cause bleeding around the spine. On Sunday Colombrito began to develop symptoms of a hematoma, including back pain, loss of feeling in his legs, and an inability to urinate. The hematoma could not be confirmed without an MRI, and Basatneh ordered an MRI "STAT" at 6:10 on Sunday evening, but the Hospital did not perform the MRI on Sunday. Indeed, the MRI was not performed until close to 3:00 on Monday afternoon; it revealed a spinal hematoma. Basatneh then ordered Colombrito transferred to a hospital where appropriate neurosurgery could be performed. The neurosurgery failed to restore Colombrito's nerve function, and he continues to suffer from permanent, incomplete paraplegia, with chronic pain and depression. These facts are not disputed in the record before us. However, the parties vigorously disputed which of the health care providers were responsible for Colombrito's injuries.

The Colombritos sued both Janga and Basatneh. They sued Torres, who took over Colombrito's care from Janga at about 4:00 on Sunday afternoon while Janga cared for her own sick child. Janga again took charge of Colombrito's care on Monday morning. The Colombritos pleaded negligence claims against all three of these physicians.

The Colombritos also sued the Hospital. In their Fourth Amended Petition, they pleaded fourteen separate allegations of negligence by the Hospital:

1. Failure to diagnose, treat, or warn;
2. Failure to timely report the patient's condition to the doctors;
3. Failure to recognize the patient's condition and injury;
4. Failure to ensure that appropriate diagnostic measures (i.e. MRI) were performed in a timely manner as ordered;
5. Failure to follow up with the patient in a timely manner;
6. Failure to discontinue Lovenox;
7. Failure to notify the doctor that Lovenox was not discontinued on a patient;
8. Failure to stop a lumbar puncture on a patient under the effects and influence of Lovenox;
9. Failure to know the rationale for and effects of the medications administered;
10. Failure to ensure the doctor's orders were followed;
11. Failure to arrange a timely transfer of the patient when the hospital was unable to properly diagnose and treat the patient;
12. Failure to adopt, formulate, or enforce rules, protocols or policies concerning the treatment of patients in Thomas Colombrito's condition;
13. Failure to ensure its employees, including nurses, comply with Rule 217.11, 217.12, the Standards of Nursing Practice, and other Rules of [sic] promulgated by the Nurse Practice Act and the Texas Board of Nursing; and

14. Failure to warn or inform its patients, physicians, or the general public of its inability to provide MRIs and/or other appropriate diagnostic measures during the weekends.

These allegations were as to the Hospital's own conduct; they represent claims of the Hospital's direct negligence.

But the Colombritos also pleaded the Hospital was indirectly—or vicariously—liable for the negligence of Audrey Newton and Joan Smalling, the nurses assigned to care for Thomas Colombrito at the Hospital (together, the "Nurses").[1] Through a series of amended petitions, the Colombritos pleaded this indirect negligence claim under the specific headings of Vicarious Liability and Principal/Agent Liability. And, after listing the fourteen above allegations against the Hospital, the Colombritos pleaded:

> Furthermore, in addition to above, Dallas Regional Medical Center is also vicariously liable for the negligence of its employees and nurses under respondeat superior.

Thus, the pleadings specifically alleged vicarious liability for the Hospital for *any* negligent conduct of its employees.

The Colombritos next pleaded ten specific allegations of negligence against Smalling:

1. Failure to timely report the patient's condition to the doctor;

2. Failure to recognize the patient's condition and injury;

3. Failure to ensure that appropriate diagnostic measures (i.e. MRI) were performed in a timely manner as ordered;

4. Failure to follow up with the patient in a timely manner;

5. Failure to discontinue Lovenox;

6. Failure to notify the doctor that Lovenox was not discontinued on a patient;

7. Failure to stop a lumbar puncture on a patient under the effects and influence of Lovenox;

8. Failure to know the rational[e] for and effects of the medications administered;

9. Failure to ensure the doctor's orders were followed; and

10. Failure to comply with Rule 217.11, 217.12, the Standards of Nursing Practice, and other Rules of [sic] promulgated by the Nurse Practice Act and the Texas Board of Nursing.

The Colombritos pleaded the same ten allegations against Newton and added one more:

> Failure to supervise the primary nurse in charge of the patient.

The Colombritos settled with Basatneh and the Hospital before trial. The parties disagree concerning whether there was a settlement with the Nurses, and that issue is discussed in detail below. Regardless, the Nurses were non-suited after mediation and before the beginning of trial. And the Colombritos' Fifth Amended Petition, which was their live pleading at trial, removed all claims—however styled—against the Hospital and the Nurses.

Thus, the Colombritos proceeded at trial against only Janga and Torres. The jury found both doctors were negligent and found Janga 51% responsible for Colom-

---

1. The Hospital's pleading specifically disclaimed any vicarious liability theory involving the Hospital and Janga or Torres. And no other employee of the Hospital is at issue in this appeal. Accordingly, we limit our discussion to the vicarious liability of the Hospital for the Nurses.

brito's injuries and Torres 4% responsible. The jury also found the Hospital and Basatneh were negligent and assigned them percentages of responsibility. Despite Janga's and Torres's requests, the Nurses' names were not submitted to the jury for findings. The jury awarded more than $22 million in actual damages to the Colombritos. The trial court applied percentages of responsibility and damage caps and ultimately signed a judgment awarding the Colombritos $504,291.94 from Torres and $10,125,725, jointly and severally from Janga. In addition, the judgment awarded $250,000 in non-economic damages from Janga and Torres. Janga and Torres appeal.[2]

### Submission of Nurse Smalling and Nurse Newton

██ Appellants' first issue contends the trial court erroneously refused to submit the Nurses individually in the court's charge to the jury. A trial court has wide discretion in submitting instructions and jury questions. *European Crossroads' Shopping Ctr., Ltd. v. Criswell*, 910 S.W.2d 45, 54 (Tex.App.-Dallas 1995, writ denied). We review the trial court's submission of jury questions for an abuse of discretion. *MRT, Inc. v. Vounckx*, 299 S.W.3d 500, 505 (Tex.App.-Dallas 2009, no pet.). The trial court must submit a question that is raised by the written pleadings and evidence. Tex.R. Civ. P. 278; *Park N. Serv. Ctr., L.P. v. Applied Circuit Tech., Inc.*, 338 S.W.3d 719, 721 (Tex.App.-Dallas 2011, no pet.). Indeed, the court may refuse to submit a properly requested question only if there is no evidence in the record to warrant its submission. *Park N. Serv. Ctr.*, 338 S.W.3d at 721.

In this case, appellants contend the trial court should have submitted the Nurses individually within both the charge's first question (which identified parties whose negligence had proximately caused the injury of Thomas Colombrito) and second question (which determined the negligent parties' percentage of responsibility). Appellants made timely objections to the court's refusal to submit the Nurses individually in both questions; appellants also tendered a proposed charge that included separate lines for the two Nurses under both questions.

### The Trial Court's Charge

The trial court's charge provided the jury with four different sets of definitions of the terms "negligence," "ordinary care," and "proximate cause." Each set of three definitions was tailored to a particular person or entity. Thus, the definitions for Drs. Janga and Torres instructed the jury concerning the meaning of each of those terms for a physician. The remaining sets instructed the jury concerning the terms' meanings for a hospital (for the Hospital), for a nurse (for the two Nurses), and for a neurologist (for Dr. Basatneh).[3]

The trial court's first question asked:

1. Did the negligence, if any, of those named below proximately cause the injury of Thomas Colombrito?

Answer "Yes" or "No" for each of the following:

a. Sireesha Janga, M.D. _____

b. Richard Torres, M.D. _____

c. Lutfi Basatneh, M.D. _____

d. Dallas Regional Medical Center _____

---

2. In this appeal, Janga has filed a brief that fully addresses the doctors' issues. Torres's brief adopts Janga's brief. We will address the arguments in Janga's brief as Appellants' arguments.

3. These definitions were requested by Janga and Torres. We find no objection to them in the record before us.

The jury answered "Yes" on each of the four lines. The trial court's second question, with its accompanying instructions, then asked:

*If you have answered "Yes" to Question 1 for more than one of those named below, then answer the following question. Otherwise, do not answer the following question.*

Assign percentages of responsibility only to those you found caused or contributed to cause injury to Thomas Colombrito. The percentages you find must total 100 percent. The percentages must be expressed in whole numbers. The negligence attributable to any one named below is not necessarily measured by the number of acts or omissions found.

2. For each of those named below that you found caused or contributed to cause injury to Thomas Colombrito, find the percentage of responsibility attributable to each.

| | |
|---|---|
| Sireesha Janga, M.D. | _____ % |
| Richard Torres, M.D. | _____ % |
| Lutfi Basatneh, M.D. | _____ % |
| Dallas Regional Medical Center | _____ % |
| | TOTAL 100% |

The jury assigned the submitted parties the following percentages of responsibility:

| | |
|---|---|
| Sireesha Janga, M.D. | 51% |
| Richard Torres, M.D. | 4% |
| Lutfi Basatneh, M.D. | 33% |
| Dallas Regional Medical Center | 12% |

■ It is apparent from the outset that these two questions are inextricably linked. The questions list the same four actors. And, importantly, Question 2 instructs the jury (a) to answer the question only if it has answered "Yes" for more than one of the four names listed in Question 1, and (b) to assign percentages of responsibility only to those it has found in Question 1 had caused or contributed to cause injury to Colombrito. Because the liability and percentage-of-responsibility questions are necessarily linked, the issue of which actors are to be submitted is governed in both instances by the provisions of Chapter 33 of the Texas Civil Practice and Remedies Code governing percentages of responsibility.

### *Chapter 33*

Chapter 33 contains the required procedure for submission in a multi-party negligence case such as this one:

(a) The trier of fact, as to each cause of action asserted, shall determine the percentage of responsibility, stated in whole numbers, for the following persons with respect to each person's causing or contributing to cause in any way the harm for which recovery of damages is sought, whether by negligent act or omission . . .

(1) each claimant;

(2) each defendant;

(3) each settling person; and

(4) each responsible third party who has been designated under Section 33.004.

(b) This section does not allow a submission to the jury of a question regarding conduct by any person without sufficient evidence to support the submission.

TEX. CIV. PRAC. & REM.CODE ANN. § 33.003 (West 2008). This section—like the standard jury question submitted by the trial court in our case—ties a determination of percentage of responsibility to the negligent causing of the claimant's injury. Thus, a person must be submitted in both the liability and percentage-of-responsibility questions if she falls within one of the categories listed in section 33.003(a) and if sufficient evidence supports her submission. *See id.*

### The Nurses as Settling Persons

■ Appellants contend the Nurses are settling persons within the meaning of Chapter 33.[4] A settling person is "a person who has, at any time, paid or promised to pay money or anything of monetary value to a claimant in consideration of potential liability with respect to the personal injury ... for which recovery of damages is sought." *Id.* § 33.011(5). It is undisputed that a confidential Rule 11 and Settlement Agreement (the "Agreement") was reached and signed during the parties' September 2, 2009 mediation of this cause. The Agreement settled all claims among the parties, with "[n]o claims excepted." It called for the Hospital to pay the agreed amount and for the plaintiffs to release all employees of the Hospital who were involved in any way in the care and treatment of Thomas Colombrito or the operations of the Hospital that were at issue in the case. The parties to the Agreement were identified therein as Plaintiffs Thomas Colombrito and Phorsha Colombrito and Defendants Dallas Regional Medical Center, Joan Smalling, and Audrey Newton, and counsel for both nurses signed on their behalf. The Agreement was later formally embodied in the Mutual General Release. In that document, the Hospital and all of its employees were released from any further liability to the Colombritos. The Nurses were non-suited on September 9, 2009, and the Colombritos filed their Fifth Amended Petition, dropping all claims against the Nurses and the Hospital.[5] Before opening statements at trial, counsel for plaintiffs stated on the record, "The hospital money is to release all the hospital employees from top to bottom to include [the] two nurses that were named and have since been non-suited."

The Colombritos contend the Nurses are not settling persons. They argue the Nurses have not met the statutory definition because they have not "paid or promised to pay money or anything of monetary value to a claimant in consideration of potential liability." *See id.* Certainly the Nurses were potentially liable to the Colombritos before the settlement, and they were no longer potentially liable afterward. The Colombritos acknowledge the Nurses are, thus, released parties. But they argue the Nurses are not settling persons because they did not pay either the Colombritos or the Hospital in return for that release from potential liability.

The Colombritos identify no authority concluding one party *cannot* pay settlement funds on behalf of another. And at least one Texas court has decided this issue to the contrary. In *Southwestern Bell Telephone Co. v. General Cable Industries,* 966 S.W.2d 166 (Tex.App.-El Paso 1998, pet. denied), the court addressed a dispute concerning contribution rights between two defendants. The defendants and the plaintiff had entered into a settlement agreement whereby Southwestern Bell would pay the entirety of the negotiated settlement amount to the plaintiff, the plaintiff would release both Southwestern Bell and General Cable, and Southwestern Bell would retain contribution rights against General Cable for its share of the settlement once their respective percentages of responsibility were determined in this suit. *Id.* at 167–68. However, General Cable subsequently moved for summary judgment against

---

4. The Nurses made no claim of their own in this lawsuit, so they were not claimants. They had been non-suited before trial, so they were no longer defendants. And no other party had designated them as responsible third parties. Thus, the only possible basis for submitting them was as settling persons.

5. The Hospital was formally dismissed from the lawsuit with prejudice after the trial.

Southwestern Bell, alleging, *inter alia,* that it was immune from contribution claims as a settling defendant. *Id.* at 167. The trial court granted the motion. On appeal, the court analyzed whether General Cable was in fact a settling person within the meaning of Chapter 33. The court looked to the agreement as a whole, noting that in return for Southwestern Bell paying the total negotiated sum, General Cable limited its own ultimate liability to that sum, while retaining the right to litigate its own and Southwestern Bell's respective responsibility for the plaintiff's injuries and receiving a release from the plaintiff. *Id.* at 172–73. The court reasoned:

> Nothing in Section 33.011(5) requires that a defendant personally and directly pay or promise to pay money or anything of value to the claimant. Likewise, this definition does not prohibit the payment of money by one defendant or party on behalf of another.

*Id.* at 173. And the court concluded that "the payment of money by [Southwestern Bell] on its own behalf and on behalf of General Cable in consideration of the potential liability of both defendants is a payment of money by General Cable." *Id.* We agree with the El Paso court.

▬ From a similar perspective, we know that when insurance is involved, a settlement can be achieved by one person's paying for another's release. An insurer and its insured have a contractual relationship that requires the insurer to pay on the insured's behalf under the circumstances called for in their policy. Whether in the insurance arena or otherwise, one party will pay for another's liability when their relationship calls for indemnity. *See generally Black's Law Dictionary* 781 (8th ed. 1999) (indemnity is a "duty to make good any loss, damage, or liability incurred by another"). The duty to indemnify may

be based on contract, as in the case of an insurer or of one who voluntarily agrees to "front" settlement money for another. *See Southwestern Bell,* 966 S.W.2d at 173. The duty may also arise by operation of law, based on principles of vicarious liability. "Vicarious liability is liability placed upon one party for the conduct of another, based solely upon the relationship between the two." *Affordable Power, L.P. v. Buckeye Ventures, Inc.,* 347 S.W.3d 825 at 833 (Tex.App.-Dallas 2011, no pet.). In an employment relationship, the vicarious liability operating is respondeat superior. Under that doctrine, an employer is exposed to liability not because of any negligence on its own part, but because of the employee's negligence in the scope of the employment. *Id.* This Court has stated:

> Indeed, under the doctrine of respondeat superior, master and servant are one and the same. The principal is liable for the act of his servant or agent performed within the scope of his employment. It is derivative liability. The employer and employee composed one entity, for one wrongful act causing injury to one person, usually on one date in one episode.

*White v. Dennison,* 752 S.W.2d 714, 717 (Tex.App.-Dallas 1988, writ denied) (citing *Marange v. Marshall,* 402 S.W.2d 236, 239 (Tex.Civ.App.-Corpus Christi 1966, writ ref'd n.r.e.)). Thus, as to the responsibility to pay a judgment arising out of negligence in the course of employment, employer and employee are the same person.

We conclude that as to settlement of the entirety of the derivative claims against an employer and an employee, they are the same person as well. The Colombritos' claim against the Hospital for indirect negligence is the same claim as the Colombritos' claim for direct negligence against the Nurses. As to that single claim, the Hospital and the Nurses composed one entity

for the Nurses' wrongful acts that caused injury to Colombrito. *See White*, 752 S.W.2d at 717. And that single claim was settled by the Agreement. By agreeing to the settlement terms in the Agreement, the Nurses received a release, but they also left themselves open to the possibility of an indemnity suit by the Hospital. *See Affordable Power*, 347 S.W.3d 825 at 833 ("Therefore, in a case in which one defendant's liability is premised solely on respondeat superior, that defendant's liability is purely vicarious, and a claim for common law indemnity exists."). Whether the Hospital took advantage of its indemnity rights against the Nurses in this case is of no import here. Whether the Hospital paid or the Nurses paid, a single legal entity bought its peace for a single claim. The Nurses are settling persons, and they satisfy the first requirement for submission under section 33.003. *See* Tex. Civ. Prac. & Rem.Code § 33.003(a).[6]

### Evidence of the Nurses' Negligence

■ The second requirement for submission under section 33.003 is that there be sufficient evidence to support the submission. Tex. Civ. Prac. & Rem.Code § 33.003(b). Appellants contend sufficient evidence was offered by the Colombritos' own expert witness, Dr. Joseph Varon, whose credentials include working as a professor of nursing. The Colombritos do not challenge that there was indeed evidence the Nurses were negligent. Accordingly, for purposes of this analysis, we briefly summarize our review of Varon's testimony. Varon testified the Nurses were negligent in at least the following ways.

(1) The Nurses did not stop the administration of agents (namely, Lovenox and aspirin) that are known to cause bleeding complications in a lumbar puncture. Acknowledging there was conflicting testimony concerning whether Janga had told the Nurses to discontinue these medications, Varon opined that (a) if the doctor had instructed them to stop the medications, and they had not done so, they were negligent, and (b) if the doctor did not tell them to stop the medications, they did not identify the problem to the doctor and, if necessary, to the Nurses' superior.

(2) The Nurses did not know the medications they were administering and the potential side effects they could cause before and after a lumbar puncture.

(3) The Nurses failed to act to identify the need for a patient transfer to obtain an MRI.

(4) The Nurses failed to recognize the "catastrophic neurological symptoms" being experienced by the patient after his procedure.

Varon also testified that the doctors and Hospital also failed to meet their respective standards of care in these areas, but he was adamant that the Nurses failed to meet their duties and Colombrito was injured as a result.

At the close of evidence Janga moved for a directed verdict finding Nurse Smalling negligent as a matter of law, relying on Varon's testimony concerning her handling of the medication issues. The court denied the motion, stating: "I agree that it appears that negligence is very strong in that area from what we've heard, but I don't believe it rises to the level of directed verdict." When Janga followed that mo-

---

**6.** The Colombritos argue that if the Nurses are settling persons, then all employees of the Hospital were settling persons and the trial court should have submitted them all. We need not address whether any other employees of the Hospital are settling persons because no party made a request at trial to submit any other employee.

tion with one based on the evidence against Nurse Newton "for the exact same reason," the trial court denied the motion "for the same reason."

We conclude there was sufficient evidence of the Nurses' negligence at trial to support submission of their liability. Accordingly, they meet the second statutory requirement for submission as well. *See* TEX. CIV. PRAC. & REM.CODE § 33.003(b).

### The Court's Proposed Compromise

 During the charge conference, the trial court proposed a combined submission for both questions. The judge offered "to add [the Nurses] under the blank for Dallas Regional Medical Center," but not to give them their own blanks for assessment of liability or percentages of responsibility. Neither party agreed to this compromise submission: appellants stated they wanted separate lines for the Nurses, and the Colombritos wanted no lines for the Nurses. On appeal, the Colombritos contend that appellants waived their complaint concerning submission of the Nurses by refusing to have them submitted along with the Hospital as the trial court offered. We disagree. The court's compromise would not have accomplished the most basic goals of a proper multi-party submission: identifying *each* individual party that was negligent and determining *each* settling person's percentage of responsibility. TEX. CIV. PRAC. & REM.CODE ANN. § 33.003(a)(3).

For purposes of analogy, the statute expressly requires—in the very same language—the submission of *each* defendant. *Id.* § 33.003(a)(2). When a respondeat superior claim is submitted to the jury, the individual employee defendants (rather than the employer) are submitted. *See Bedford v. Moore*, 166 S.W.3d 454, 461 (Tex.App.-Fort Worth 2005, no pet.).[7] We find no authority justifying the treatment of settling employees differently than defendant employees under section 33.003(a).

We conclude the trial court's refusal to submit the Nurses as settling persons was error, and that error was not mitigated or remedied by the trial court's proposed alternative submission.

### Harm Analysis

 We will reverse if the trial court denies a proper submission of a settling person's proportionate responsibility, and the error probably caused the rendition of an improper judgment. *MCI Sales & Serv., Inc. v. Hinton*, 272 S.W.3d 17, 43 (Tex.App.-Waco 2008), *aff'd*, 329 S.W.3d 475 (Tex.2010).[8] Witnesses at trial offered ample evidence of negligence on the part of the Hospital and on the part of the two Nurses. The Hospital was submitted, but the instructions given concerning negligence by the Hospital limited the jury's consideration to the direct negligence of the Hospital itself. The jury received instructions concerning negligence of the Nurses as well, but in the absence of questions that included the Nurses, the jury had no way to apply those instructions.[9]

---

7. In a respondeat superior case, the employee defendant is submitted, and in a separate question, the jury is asked whether the employee was acting in the scope of his employment. *See* State Bar of Tex., Pattern Jury Charges, General Negligence PJC 10.6 (2010 ed.). The employer need not be submitted because if the employee was negligent, and was acting in the scope of his employment,

then liability of the employer arises as a matter of law.

8. We are not persuaded by appellants' authority to apply a "presumed harm" standard in this case.

9. Counsel for the Colombritos contends he repeatedly told the jury that the Nurses were

Appellants have identified undisputed evidence of negligence on the part of the Nurses, which we have referred to above. This evidence supported the submission of a separate issue under the liability question. If the Nurses had been submitted separately under the liability question, the jury would have been instructed to determine whether the Nurses' negligence caused injury to Thomas Colombrito. If the jury found negligence on the Nurses' part, it would have been instructed to assign some percentage of responsibility to each of them.

In other words, the jury instructions did not permit the jury to apply the negligence instructions and find the Nurses liable. Without this determination, the jury could not assign proportionate responsibility to the Nurses, as settling parties. Issue two assigned proportionate responsibility to the Hospital based upon the jury's answer to issue one. And issue one was limited to the Hospital's direct negligence. While we decline to speculate what proportionate responsibility the jury would have assigned to the Hospital if appropriate questions had been submitted as to both the Hospital's direct negligence and the Nurses' direct negligence, we must recognize that the instructions did not allow the jury to factor into its decision the Nurses' negligence. Further, we cannot assume the degree of proportionate responsibility the jury assigned to the Hospital took into account the Nurses' negligence; on the contrary, the instructions precluded it from doing so.

If the percentages assigned to the Hospital and to the Nurses totaled more than the twelve percent assigned the Hospital alone at trial, then the resulting liability for the remaining defendants or settling person would have been diminished. Indeed, if Janga's percentage of responsibility had been lowered by even one percentage point as a result of the Nurses' being separately submitted, then he would not have been found jointly and severally liable for all remaining damages to the Colombritos. We conclude the trial court's failure to submit the Nurses separately for a finding of negligence and, subsequently, for a finding of their percentage of responsibility, probably caused the rendition of an improper judgment. *See id.*

### Conclusion

We have concluded that the trial court erred by refusing to submit the Nurses as settling persons in both the first and second jury questions at trial. We have further concluded that the court's error was harmful. Accordingly, we sustain appellants' first issue. Given this disposition, we need not address their second and third issues. We reverse the trial court's judgment and remand this cause for new trial.

---

subsumed within the Hospital. But the trial court did not tell the jury that. Instead, the definitions within the charge clearly treated the Nurses as separate from the Hospital, and the Hospital's definitions related only to the conduct of the Hospital itself. We must assume that the jury followed the trial court's charge, not the remarks of counsel. *See Turner, Collie & Braden, Inc. v. Brookhollow, Inc.,* 642 S.W.2d 160, 167 (Tex.1982).