**AFFORDABLE POWER, L.P.,**
f/k/a Affordable Power,
Inc., Appellant

v.

**BUCKEYE VENTURES,**
INC., Appellee.

No. 05–09–00771–CV.

Court of Appeals of Texas,
Dallas.

July 11, 2011.

James A. Dunn, Dunn, Neal & Gerger, L.L.P., Houston, for Appellant.

Michael E. Rohde, Mark Frels, How, Frels, Berman, Rohde, Woods & Duke, P.C., John C. Sherwood, Law Offices of John C. Sherwood, Dallas, for Appellee.

Before Justices BRIDGES, FRANCIS, and LANG–MIERS.

## OPINION

Opinion By Justice BRIDGES.

Affordable Power, L.P., f/k/a Affordable Power, Inc. appeals the trial court's judgment in favor of Buckeye Ventures, Inc. In five issues, Affordable argues there is no evidence or insufficient evidence to show (1) Affordable supplied false information to Buckeye, (2) Buckeye justifiably relied on representations made by Affordable, (3) the damages awarded to Buckeye were proximately caused by Affordable, (4) Affordable can be held liable based on the statements or actions of Fred Lepovitz, and (5) Buckeye is entitled to indemnity or contribution under common law. In a single cross-issue, Buckeye argues the trial court erred in refusing to award Buckeye its attorney's fees. We affirm the trial court's judgment.

In December 2005, Buckeye contracted with TXU Energy to supply electricity to Buckeye's two car washes and one store in Pearland and Missouri City, Texas. The contract was for a three-year term and contained the following "Excess/Under Usage" provision:

> If Buyer's total consumption of electricity for all Meters in a calendar month is less than the total amount listed in Exhibit A–1 for such month by more than the under usage percentage specified in Article VI, then in addition to paying for the electricity actually consumed, Seller may charge Buyer for the total cost of liquidating the Shortfall Quantity. . . .

In March 2006, Fred Lepovitz approached Buckeye's business manager, Nicholas Raissis, about entering into an electricity supply agreement with Affordable. Lepovitz reviewed part of Buckeye's agreement with TXU and said he would take the TXU contract to his legal department. Raissis assumed Lepovitz meant Affordable's legal department. The next

day, Lepovitz again met with Raissis and Glenn Horst, Buckeye's president. Lepovitz said he met with the legal department, and "they" said the contract was not binding in Texas. Lepovitz explained the contract did not say anything about "a termination fee or amount" in the default and remedies section. Horst asked how to obtain a "switchover," and Lepovitz said he would "take care of everything." Lepovitz produced contracts for switching over to Affordable at each of Buckeye's three business locations, and Raissis signed the contracts. Lepovitz did not explain how the process of switching over to Affordable worked but said he was going to "put it in right away and when it happened, it happened."

In July 2006, Buckeye received a bill from TXU for $13,822.73. The bill showed a due date of August 14, 2006. Raissis called TXU and spoke to a customer service representative who said the bill was for a "cancellation fee." Raissis then called Lepovitz, who "said he was going to handle it." Buckeye received no further calls or billing notices from TXU until January 2007, when Raissis received a bill for $13,174.61 from a collection agency representing TXU. The bills remained unpaid, and TXU sued Buckeye in October 2007. Horst called Lepovitz, who came to Buckeye's office, obtained a copy of the legal papers, and again "said he'd take care of it." Horst thought Lepovitz was going to "take it back to their company lawyer." Horst subsequently hired an attorney because he knew the lawsuit needed to be answered.

In October 2008, Buckeye filed its third-party petition adding Affordable as a party in the lawsuit with TXU. The third-party petition alleged Affordable, acting through its agent and representative Lepovitz, made a negligent misrepresentation to Buckeye, which proximately caused Buckeye damages. Buckeye also sought a de-claratory judgment that Buckeye is entitled to contribution and/or indemnity against Affordable for any damages assessed against Buckeye in its lawsuit with TXU. Finally, Buckeye sought its attorney's fees. In December 2008, Lepovitz again met with Horst and Raissis and told them he knew "the owner or president" of Affordable and would "talk to them" and give up his commissions to take care of "these attorney's fees and take care of this TXU problem."

Following a bench trial in June 2009, the trial court entered judgment in favor of TXU against Buckeye for $30,266.17 in actual damages and $16,087.50 in attorney's fees. The final judgment also ordered that Buckeye recover the total judgment of $46,353.67 from Affordable. This appeal followed.

In its first, second, and third issues, Affordable argues there is no evidence or insufficient evidence (1) Affordable supplied false information to Buckeye, (2) Buckeye justifiably relied on a representation made by Affordable, or (3) the damages awarded to Buckeye were proximately caused by Affordable, all of which are elements of a negligent misrepresentation claim.

When no findings of fact were filed, as in this case, the reviewing court implies all necessary findings to support the judgment. *Curtis v. Comm'n for Lawyer Discipline*, 20 S.W.3d 227, 231 (Tex. App.-Houston [14th Dist.] 2000, no pet.). Implied findings of fact, like the trial court's findings, may be challenged for legal and factual sufficiency. *Id.* The standard of review is the same as that applied to a jury's findings and a trial court's findings of fact. *Id.* However, where no findings of fact were entered, the trial court's judgment will be affirmed if it can be upheld upon any basis that has support

in the record under any theory of law applicable to the case. *Id.*

When, as here, the challenging party did not have the burden of proof at trial, the challenging party must demonstrate on appeal there is no evidence to support the trial court's adverse findings. *Croucher v. Croucher,* 660 S.W.2d 55, 58 (Tex.1983); *Pete Dominguez Enters., Inc. v. County of Dallas,* 188 S.W.3d 385, 387 (Tex.App.-Dallas 2006, no pet.). Under a no-evidence point, we consider the evidence in the light most favorable to the verdict, indulging every reasonable inference in support. *City of Keller v. Wilson,* 168 S.W.3d 802, 822 (Tex.2005). A legal insufficiency challenge fails if there is more than a scintilla of evidence to support the verdict. *Formosa Plastics Corp. USA v. Presidio Eng'rs & Contractors, Inc.,* 960 S.W.2d 41, 48 (Tex.1998) (sub. op.). If, however, the evidence offered to prove a vital fact is so weak as to do no more than create a surmise or suspicion of its existence, the evidence is no more than a scintilla and is legally no evidence. *Kindred v. Con/ Chem, Inc.,* 650 S.W.2d 61, 63 (Tex.1983).

For its factual sufficiency challenge, Affordable must demonstrate there is insufficient evidence to support the adverse finding. *Pulley v. Milberger,* 198 S.W.3d 418, 426 (Tex.App.-Dallas 2006, pet. denied). In reviewing a factual sufficiency challenge, we consider and weigh all of the evidence in support of and contrary to the trial court's finding and will set aside the finding only if the evidence supporting the finding is so slight, or the evidence against it so strong, that the finding is manifestly unjust and quite clearly wrong. *See Cain v. Bain,* 709 S.W.2d 175, 176 (Tex.1986) (per curiam) (for factual sufficiency review, verdict set aside only if "clearly wrong and unjust"). The amount of evidence necessary to affirm a judgment is far less than that necessary to reverse a judgment. *Pulley,* 198 S.W.3d at 427.

■ Under a negligent misrepresentation theory, one who, in the course of business, profession, or employment, or in any transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information. *McCamish, Martin, Brown & Loeffler v. F.E. Appling Interests,* 991 S.W.2d 787, 791 (Tex.1999) (citing RESTATEMENT (SECOND) OF TORTS § 552(1)). The sort of "false information" contemplated in a negligent misrepresentation case is a misstatement of existing fact, not a promise of future conduct. *Allied Vista, Inc. v. Holt,* 987 S.W.2d 138, 141 (Tex.App.-Houston [14th Dist.] 1999, pet. denied). A person may not justifiably rely on a representation if there are "red flags" indicating such reliance is unwarranted. *Grant Thornton LLP v. Prospect High Income Fund,* 314 S.W.3d 913, 923 (Tex.2010).

■ To establish negligent misrepresentation, a plaintiff must prove proximate causation. *S & I Mgmt., Inc. v. Sungju Choi,* 331 S.W.3d 849, 856 (Tex.App.-Dallas 2011, no pet.). The components of proximate cause are cause in fact and foreseeability. *Id.* The test for both components is whether the defendant's conduct was a substantial factor in bringing about the injury that would not otherwise have occurred. *Id.*

■ Affordable argues Lepovitz' statement was a legal opinion, and claims of fraud cannot arise from legal opinions, citing *Fina Supply, Inc. v. Abilene National Bank,* 726 S.W.2d 537, 540 (Tex.1987). However, misrepresentations involving a point of law will be considered misrepresentations of fact if they were intended and understood as such. *Id.* Further,

Affordable argues Buckeye has consistently taken the position in the underlying lawsuit that the TXU contract was void and unenforceable. Thus, Affordable argues, Lepovitz' statement that the TXU contract was void cannot constitute the giving of false information under a negligent misrepresentation cause of action.

As to whether Buckeye justifiably relied on Lepovitz' misrepresentations, Affordable argues the contract contained an under usage penalty provision, and Buckeye was charged with knowledge of this penalty provision. In addition, Affordable cites to evidence that Raissis understood there was a penalty for under usage and reviewed the TXU contract after Lepovitz told him the contract contained no early termination penalty. Finally, Affordable argues the evidence shows any losses Buckeye suffered were proximately caused by Buckeye's failure to read and understand the terms of its contract with TXU, failure to call TXU regarding early termination, and failure to obtain a separate legal opinion on the early termination issue.

 Our review of the evidence shows Lepovitz represented he had Affordable's legal department review Buckeye's contract with TXU, and the contract did not provide for "a termination fee or amount" and was not binding in Texas. Affordable's chief executive officer, Kamran Virani, testified at trial that Affordable did not have and had never had an in-house legal department. Horst asked how to obtain a "switchover," and Lepovitz said he would "take care of everything." Lepovitz did not explain how the process of switching over to Affordable worked but said he was going to "put it in right away and when it happened, it happened." Buckeye switched to Affordable in March 2006 and did not receive a bill from TXU until July 2006. At that time, Lepovitz said he would "handle" the bill, and Buck-

eye received no further bills until January 2007.

Based on this evidence, it appears Lepovitz' representation concerning a termination fee was intended and understood as a representation of fact. *See Fina Supply,* 726 S.W.2d at 540. Further, we cannot conclude Buckeye's position at trial that the TXU contract was unenforceable precludes Buckeye from establishing that Lepovitz misrepresented that Buckeye would not owe TXU a termination fee. The under usage provision of the contract refers to monthly usage under the contract, not a termination penalty, and it did not prevent Buckeye from justifiably relying on Lepovitz' statement that there was no termination penalty under the TXU contract. *See Grant Thornton,* 314 S.W.3d at 923. Finally, we conclude the evidence establishes Lepovitz' statements were a substantial factor in bringing about Buckeye's termination of the TXU contract, resulting in a $30,266.17 fee owed to TXU. *See S & I Mgmt.,* 331 S.W.3d at 856. Under these circumstances, the evidence is legally and factually sufficient to establish Affordable supplied false information to Buckeye, Buckeye justifiably relied on a representation made by Affordable, and the damages awarded to Buckeye were proximately caused by Affordable. *See Formosa,* 960 S.W.2d at 48; *Cain,* 709 S.W.2d at 176. We overrule Affordable's first, second, and third issues.

 In its fourth issue, Affordable argues there is no evidence or insufficient evidence that Affordable can be held liable based on the statements or actions of Lepovitz. Specifically, Affordable argues Lepovitz was an independent contractor who acted outside the scope of his authority. Therefore, Affordable argues, it is not liable for Lepovitz' actions.

 Generally, an employer is liable for its employee's tort only when the

tortious act falls within the scope of the employee's general authority in furtherance of the employer's business and for the accomplishment of the object for which the employee was hired. *Minyard Food Stores, Inc. v. Goodman*, 80 S.W.3d 573, 577 (Tex.2002). For an employee's acts to be within the scope of employment, the conduct must be of the same general nature as that authorized or incidental to the conduct authorized. *Id.* An agent's authority to act on behalf of a principal depends on some communication by the principal either to the agent (actual or express authority) or to the third party (apparent or implied authority). *Gaines v. Kelly*, 235 S.W.3d 179, 182 (Tex.2007). Actual authority denotes authority the principal: (1) intentionally confers upon the agent, (2) intentionally allows the agent to believe he has, or (3) by want of ordinary care allows the agent to believe himself to possess. *Sanders v. Total Heat & Air, Inc.*, 248 S.W.3d 907, 913 (Tex.App.-Dallas 2008, no pet.). Apparent authority is based on estoppel, arising either from a principal knowingly permitting an agent to hold himself out as having authority or by a principal's actions which lack such ordinary care as to clothe an agent with the indicia of authority, thus leading a reasonably prudent person to believe that the agent has the authority he purports to exercise. *Gaines*, 235 S.W.3d at 182. The principal's full knowledge of all material facts is essential to establish a claim of apparent authority based on estoppel. *Id.* When making that determination, only the conduct of the principal is relevant. *Id.* The standard is that of a reasonably prudent person, using diligence and discretion to ascertain the agent's authority. *Id.* at 182–83. Thus, to determine an agent's apparent authority we examine the conduct of the principal and the reasonableness of the third party's assumptions about authority. *Id.* at 183.

Here, the record shows Lepovitz testified he thought he was becoming an authorized agent of Affordable when he signed a sales consulting agreement with Affordable in December 2005. Although Lepovitz' agreement with Affordable specified Lepovitz was an independent contractor, it also provided that all confidential information related to Affordable and its business remained the property of Affordable, and Affordable retained authorship rights in all original subject matter created or developed by Lepovitz for Affordable. Virani testified that, in March 2006, Affordable had no employees that were involved in direct sales. Instead, Affordable relied on "five to ten independent contractors," including Lepovitz, who went out on behalf of Affordable as sales representatives to solicit new contracts. Virani testified, "[i]n our industry, an agent, an independent contractor, a broker, it's all intertwined."

Virani testified Affordable had a "commercial enrollment authorization" form that was presented to customers who were going to enroll in Affordable's electricity program. The authorization used to enroll Buckeye was entered into evidence, and it is signed by Lepovitz as "Sales Representative." The authorization provides that Affordable has Buckeye's permission to use the information provided by Buckeye to enroll Buckeye for electric service in Texas. Under its terms, Buckeye authorized Affordable to become Buckeye's new retail electric provider and to act as Buckeye's agent to make the change and direct the current provider to work with Affordable to make the change.

Thus, the record shows Affordable entered into a sales consulting agreement with Lepovitz and relied on Lepovitz and others as sales representatives to sign up new customers for Affordable. The enrollment authorization whereby new custom-

ers enrolled was provided by Affordable and in this case identified Lepovitz as Affordable's sales representative. The authorization went on to establish Affordable as Buckeye's agent in making the change over to Affordable's services. Nothing in the record shows Lepovitz was represented to Buckeye as being an independent contractor. Under these circumstances, we conclude the evidence was legally and factually sufficient to establish Lepovitz acted with apparent authority as Affordable's agent when he convinced Buckeye to sign the agreement for Affordable's services. *See Gaines,* 235 S.W.3d at 182; *Minyard,* 80 S.W.3d at 577; *Formosa,* 960 S.W.2d at 48; *Cain,* 709 S.W.2d at 176. We overrule Affordable's fourth issue.

■ In its fifth issue, and although it states that Buckeye did not prevail on its indemnity or contribution claim, Affordable argues there is no evidence or insufficient evidence that Buckeye is entitled to indemnity or contribution under common law. In its cross-issue, Buckeye argues the trial court erred in refusing to award Buckeye its attorney's fees on its declaratory judgment action for indemnity against Affordable. In its brief, Buckeye states it no longer contends that it is entitled to contribution under the facts of this case; therefore, we will address only Buckeye's claim for common law indemnity raised in its declaratory judgment action.

■ Under Texas law, the availability of common law indemnity is extremely limited. *Cypress Creek Util. Serv. Co. v. Muller,* 640 S.W.2d 860, 864 (Tex.1982); *Vecellio Ins. v. Vanguard Underwriters,* 127 S.W.3d 134, 138 (Tex.App.-Houston [1st Dist.] 2003, no pet.). Common law indemnity survives in Texas only in products liability actions to protect an innocent retailer in the chain of distribution and in negligence actions to protect a defendant whose liability is purely vicarious in nature. *Aviation Office of Am., Inc. v. Alex-*

*ander & Alexander of Tex., Inc.,* 751 S.W.2d 179, 180 (Tex.1988); *Vecellio,* 127 S.W.3d at 138. Vicarious liability is liability placed upon one party for the conduct of another, based solely upon the relationship between the two. *Vecellio,* 127 S.W.3d at 138. Under the doctrine of respondeat superior, an employer is exposed to liability not because of any negligence on its part, but because of the employee's negligence in the scope of that employment. *Id.* Therefore, in a case in which one defendant's liability is premised solely on respondeat superior, that defendant's liability is purely vicarious, and a claim for common law indemnity exists. *Id.* For a right of indemnity based on vicarious liability to exist, the injured party must have a cause of action against the indemnitor, that is, the one whose action caused the indemnitee to be vicariously liable. *Plas-Tex, Inc. v. U.S. Steel Corp.,* 772 S.W.2d 442, 446 (Tex.1989); *Vecellio,* 127 S.W.3d at 138. There is no right of indemnity against a defendant who is not liable to the plaintiff. *See Plas-Tex,* 772 S.W.2d at 446; *Vecellio,* 127 S.W.3d at 138.

Buckeye notes that the enrollment authorization it signed with Affordable made Affordable Buckeye's agent for purposes of substituting Affordable as Buckeye's electricity provider in place of TXU. Buckeye argues "the fact that the negligent misrepresentations were made in the context of the creation and performance of Affordable Power's agency to obtain the 'switchover' of electrical service from TXU" entitled Buckeye to common law indemnity against Affordable. Buckeye concedes the trial court's judgment does not specify the claim for which Buckeye was awarded judgment against Affordable but argues there is nothing in the record to support the "assumption" by Affordable that the trial court did not award any relief on Buckeye's indemnity claim. In the alternative, Buckeye argues the trial

court erred as a matter of law if it denied relief on the indemnity claim because the evidence conclusively established Buckeye was entitled to prevail on its indemnity claim. Thus, Buckeye argues, the trial court abused its discretion in refusing to award attorney's fees under the Declaratory Judgment Act on Buckeye's claims for a declaratory judgment that it was entitled to indemnity.

In its third-party petition, Buckeye asserted two causes of action: a negligent misrepresentation claim and a declaratory judgment claim seeking contribution and/or indemnity. Buckeye's counsel testified at trial that Buckeye's attorney's fees amounted to $38,455.50 and segregated that amount between its defense of the TXU claims and its claims against Affordable to 25% and 75% respectively. The trial court's judgment, however, awarded Buckeye none of its attorney's fees. Instead, the judgment awarded TXU a total of $46,353.67 against Buckeye and awarded this exact amount to Buckeye against Affordable. Further, the judgment contains no declaratory relief. Thus, the judgment does not indicate that Buckeye prevailed on its claim for declaratory relief on indemnity.

▮ As to Buckeye's claim that, by naming Affordable as Buckeye's agent to switch over Buckeye's electricity from TXU, Buckeye was entitled as a matter of law to recover under its indemnity claim, we disagree. Buckeye became Affordable's customer and authorized Affordable to switch over its electrical service from TXU. Buckeye's relationship with TXU was contractual and direct. In reliance on the negligent misrepresentation of Affordable's agent, Buckeye entered into the agreement with Affordable and stopped paying TXU. Buckeye's failure to fulfill its contract with TXU resulted in the underlying lawsuit and an award of damages to TXU. Buckeye's liability was not pure-

ly vicarious and was not premised on respondeat superior. *See Vecellio,* 127 S.W.3d at 138. Thus, Buckeye was not entitled to recover on its claim for common law indemnity. *See id.* Because Buckeye did not prevail on its declaratory judgment claim for indemnity, it was not entitled to recover attorney's fees under the Declaratory Judgment Act. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 37.009 (West 2008). We sustain Affordable's fifth issue. We overrule Buckeye's cross-issue.

We affirm the trial court's judgment.