

# Fourth Court of Appeals
## San Antonio, Texas

### OPINION

No. 04-12-00734-CV

Florentino **GARZA** d/b/a Tino's Auto Mart,
Appellant

v.

**FORD MOTOR COMPANY**,
Appellee

From the 79th Judicial District Court, Jim Wells County, Texas
Trial Court No. 12-02-50838-CV
Honorable Richard C. Terrell, Judge Presiding

Opinion by:    Sandee Bryan Marion, Justice

Sitting:       Catherine Stone, Chief Justice
               Sandee Bryan Marion, Justice
               Patricia O. Alvarez, Justice

Delivered and Filed:  November 6, 2013

AFFIRMED

In 2008, Luis Aguilar died when a vehicle fell from a car jack and landed on him. Aguilar's estate and survivors sued Ford Motor Company and Florentino Garza, a used car dealer doing business as Tino's Auto Mart.[1]  The trial court rendered a directed verdict in Garza's favor and, following a jury trial, a take-nothing verdict was rendered in favor of Ford. At the directed verdict

---

[1] The Aguilars alleged Ford's car jack was unsafe and Ford failed to adequately warn of its danger. The Aguilars alleged Garza "manufactured, re-assembled, sold and/or marketed and re-marketed the subject vehicle" and "sold the vehicle without a jack that was safe or fit for use with the vehicle, or none at all" and "sold the subject vehicle with the same inadequate instructions for safe use and/or warnings as originally provided by Ford."

hearing, Garza's counsel announced Garza would accept an Assumption of Defense Agreement originally offered by Ford to Garza before trial commenced. After the jury verdict, but before entry of the final judgment, Garza filed a cross-claim against Ford for indemnity in which he sought recovery of his defense expenses. Ford counter-claimed for its attorney's fees alleging Garza breached the Assumption of Defense Agreement ("the agreement"). Garza's and Ford's claims against each other were severed and a final judgment in the Aguilar lawsuit was rendered. In the severed action, Garza and Ford filed cross-motions for summary judgment. The trial court granted Ford's motion, and Garza now appeals. We affirm.

### INDEMNIFICATION

About one year before the Aguilar lawsuit went to trial, Garza's attorney sent a letter to Ford's attorney requesting Ford to "immediately fully defend and indemnify" Garza pursuant to the common law and Texas Civil Practice and Remedies Code section 82.002. About two months later, Ford responded that it would "conditionally indemnify and assume the defense of Florentino Garza d/b/a Tino's Auto Mart" pursuant to the conditions outlined in the agreement. Almost one year later, Garza accepted Ford's proposal during the directed verdict hearing and signed the agreement on September 22, 2011. Ford signed the agreement on September 29, 2011. The agreement was filed with the trial court on September 30, 2011. Garza later sent Ford a second letter, demanding that Ford reimburse Garza's insurer for attorney's fees incurred from the date of his first demand letter dated September 15, 2010 to the date he signed the agreement on September 22, 2011.

In its motion for summary judgment, Ford argued the agreement satisfied any common law or statutory obligation to indemnify Garza and the agreement provided Garza would pay his own costs of defense up to and including the date Ford assumed Garza's defense. According to Ford, that date was September 29, 2011. Therefore, Ford contends it is obligated to indemnify Garza

for his defense costs beginning on September 30, 2011. Ford asserted Garza repudiated and breached the agreement by sending a second letter demanding that Ford pay *all* of Garza's defense costs, even those incurred prior to the date Ford assumed Garza's defense. In his motion for summary judgment, Garza argued the agreement was never intended to be the exclusive source of defense and indemnity rights and duties. According to Garza, the agreement has a limited purpose: to define the terms by which Ford assumes the defense of dealers of its product. Garza also contends the agreement does not address ultimate liability for defense and indemnity for any period before Ford's assumption of Garza's defense or after Ford tendered the defense back to Garza.

## A.    Standard of Review

We review an order granting a traditional motion for summary judgment de novo. *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005). A traditional motion for summary judgment should be granted only when the movant establishes there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law on the grounds expressly set forth in the motion. TEX .R. CIV. P. 166a(c); *Browning v. Prostok*, 165 S.W.3d 336, 344 (Tex. 2005).

In construing a written contract, our primary concern is to ascertain the true intentions of the parties as expressed in the instrument. *ASI Tech., Inc. v. Johnson Equip. Co.*, 75 S.W.3d 545, 548 (Tex. App.—San Antonio 2002, pet. denied). We examine and consider the entire writing in an effort to harmonize and give effect to all the provisions of the contract so that none will be rendered meaningless. *Id.* No single provision taken alone shall be given controlling effect; instead, all provisions must be considered with reference to the whole instrument. *Id.* When the parties disagree over the meaning of an unambiguous contract, we must determine the parties' intent from the agreement itself, not from the parties' present interpretation. *Id.*

**B.** **The Agreement**

The agreement provides in pertinent part as follows:

1. [Ford] agrees to defend and indemnify [Garza] with respect to [the Aguilar lawsuit], as of an effective date signified by counsel for Ford's signature and date recorded below.

2. Ford will control the defense of the case on behalf of both [Garza] and Ford. *Ford will pay all attorney's fees and costs incurred on behalf of [Garza] after the last date of the signature page herein.* Ford will be responsible for 100% of any money judgment for compensatory or general damages entered, or settlement paid, regardless of whether such judgment or settlement is entered or made against Ford or [Garza] jointly, or only as against one. However, Ford will not be responsible for satisfying any judgment for punitive damages as against [Garza]. [Emphasis added]

3. This agreement to defend and indemnify will remain in effect until any allegation, fact or evidence indicates to Ford that [Garza], including through acts or omissions of its officers, employees, agents or representatives, may be independently liable for any of the damages suffered or claimed by plaintiffs. In the event that Ford becomes aware of allegations of, or evidence of, [Garza's] negligence or independent liability, Ford shall have the right, in its sole discretion, to withdraw from the defense and indemnification of [Garza] and tender back the indemnification and defense of [Garza] to [Garza]. Upon notification by Ford, [Garza] shall be afforded reasonable time to obtain counsel at which time the retender shall be deemed complete.

4. [Garza] represents that it knows of no facts or circumstances which would or could suggest that an independent claim of liability exists against [Garza] for the acts or omissions of [Garza], its officers, employees, or agents. [Garza] also represents that, should it become aware in the future of any facts or circumstances which would or could suggest that an independent claim of liability exists against [Garza], it will immediately notify Ford of such facts or circumstances.

5. [Garza] consents to the representation by Colvin, Chaney, Saenz & Rodriguez, L.L.P. as the attorneys selected by Ford to represent both Ford and [Garza], and waives any conflict of interest which may exist. [Garza] agrees to waive any objection to Ford's continued employment of Colvin, Chaney, Saenz & Rodriguez, L.L.P. as counsel for Ford at any stage of these proceedings, even in the event that Ford withdraws its defense of [Garza] hereafter.

6. Subject to and without amendment to or change of the requisites and limitations regarding conflicts of interest and the waiver of such conflicts as established by the Texas Rules of Civil Procedure, the Texas Disciplinary Rules of Professional Conduct and other relevant, controlling Texas law, [Garza] further waives and agrees not to assert any conflict of interest or potential conflict of interest claim as

to Colvin, Chaney, Saenz & Rodriguez, L.L.P.'s representation of Ford in other pending and future cases or matters in which [Garza] is, or may in the future, be an adverse party (whether personal injury, products liability, consumer warranty, or otherwise) because of the fact that Colvin, Chaney, Saenz & Rodriguez, L.L.P. represents [Garza] in this case. This provision also applies to any additional counsel retained by Ford in this litigation.

7. *[Garza] will pay all costs of [his] own defense up to and including the date of Ford's assumption of [his] defense.* In the event Ford re-tenders [Garza's] defense because of discovery of any facts knowingly withheld by [Garza], [Garza] will reimburse Ford for the fees and expenses, if any incurred on behalf of [Garza] during the period of assumption. [Emphasis added]

Garza asserts that under the terms of the agreement, he is only *initially* responsible for his own defense costs and whether Ford will *ultimately* be liable for those costs must be determined by reference to sources outside the agreement, such as the common law, other agreements between Ford and other dealers, and the Texas indemnity statutes.

## C.       Common law and Statutory Indemnity

The availability of common law indemnity is extremely limited. *See Affordable Power, L.P. v. Buckeye Ventures, Inc.*, 347 S.W.3d 825, 833 (Tex. App.—Dallas 2011, no pet.). In Texas, common law indemnity survives only in products liability actions to protect an innocent retailer in the chain of distribution and in negligence actions to protect a defendant whose liability is purely vicarious in nature. *Id.* Common-law indemnity requires an adjudication of the manufacturer's liability or an admission of liability by the manufacturer. *See Gen. Motors Corp. v. Hudiburg Chevrolet, Inc.*, 199 S.W.3d 249, 255 (Tex. 2006) ("The indemnitor must be liable or potentially liable for the product defect, and his liability must be adjudicated or admitted.").

In 1993, the Texas Legislature supplemented the common law by enacting Civil Practice and Remedies Code section 82.002, which allows an innocent seller to seek indemnification from the manufacturer of an allegedly defective product. "A manufacturer shall indemnify and hold harmless a seller against loss arising out of a products liability action, except for any loss caused

by the seller's negligence, intentional misconduct, or other act or omissions, such as negligently modifying or altering the product, for which the seller is independently liable." TEX. CIV. PRAC. & REM. CODE ANN. § 82.002(a) (West 2011); *see also Fitzgerald v. Advanced Spine Fixation Sys., Inc.*, 996 S.W.2d 864, 866 (Tex. 1999) ("The duty [to indemnify] is a new, distinct statutory duty . . . ."). "Loss" includes "court costs and other reasonable expenses, reasonable attorney fees, and any reasonable damages." TEX. CIV. PRAC. & REM. CODE § 82.002(b). "The duty to indemnify under this section: (1) applies without regard to the manner in which the action is concluded; and (2) is in addition to any duty to indemnify established by law, contract, or otherwise." *Id.* § 82.002(e). The manufacturer's duty begins when it is given notice that a seller has been sued. *See Meritor Auto., Inc. v. Ruan Leasing Co.*, 44 S.W.3d 86, 89 (Tex. 2001) (stating plaintiff's pleadings are sufficient to invoke manufacturer's duty under section 82.002).

There is no question Garza had an existing right to statutory indemnity under section 82.002. Ford's duty began when it was given notice that Garza had been sued. *See id.* Garza gave notice on September 15, 2010, and Ford offered to assume Garza's defense on November 2, 2010 but only under the terms expressed in the agreement. Under the unambiguous terms of the agreement Ford would "pay all attorney's fees and costs incurred on behalf of [Garza] after the last date of the signature page herein." If the agreement had been signed by both parties on some date in November 2010, then Ford would have been deemed to have assumed Garza's defense on that date and would have been obligated to pay Garza's defense costs from that date forward, without regard to whether a directed verdict was rendered or a jury verdict was returned in Garza's favor. However, the agreement also unambiguously provided that Ford's obligation to pay Garza's defense costs did not extend to any costs incurred before the date on which Ford assumed Garza's defense. Because the agreement was not immediately accepted by Garza, Ford did not assume

Garza's defense or responsibility for his defense costs until Garza accepted the agreement and Ford signed the agreement on September 29, 2011.

A manufacturer's duty to indemnify under section 82.002 "is in addition to any duty to indemnify established by law, contract, or otherwise." TEX. CIV. PRAC. & REM. CODE § 82.002(e). However, a manufacturer and a seller may enter into a contract that expressly sets forth the terms of the manufacturer's duty to indemnify and the circumstances under which the seller relinquishes any common law or statutory right to indemnification. "Under Texas law . . . as well as by Texas usage and custom, a deal is a deal." *ASI Tech.*, 75 S.W.3d at 546. Here, the agreement unambiguously provided that Ford would "pay all attorney's fees and costs incurred on behalf of [Garza] after the last date of the signature page herein," which was September 29, 2011. The agreement also unambiguously provided that Garza would "pay all costs of [his] own defense up to and including the date of Ford's assumption of [his] defense," which again, was September 29, 2011. "[W]e believe executing the agreement itself is a clear and decisive act inferring [Garza's] intent to relinquish [his] right to statutory indemnity." *Id.* at 549.

Nevertheless, Garza argues the agreement cannot serve as a "release" of a statutory indemnification claim because the agreement does not contain release language or specifically mention such a claim. Garza also contends the agreement did not satisfy Ford's statutory obligation to indemnify because the agreement includes conditions not provided for in section 82.002. For example, Garza contends Ford could not condition its statutory indemnification obligation on Garza promising that he "knows of no facts or circumstances which would or could suggest that an independent claim of liability exists against" him or on Garza's waiver of "any conflict of interest which may exist[]" because section 82.002 makes no provision for such conditions. We disagree.

Under section 82.002, a manufacturer is not required to "indemnify and hold harmless a seller against loss arising out of a products liability action, . . . for any loss caused by the seller's negligence, intentional misconduct, or other act or omission, such as negligently modifying or altering the product, for which the seller is independently liable." TEX. CIV. PRAC. & REM. CODE § 82.002(a). The provision in the agreement allowing Ford to re-tender the defense back to Garza if "any allegation, fact or evidence indicates to Ford that [Garza], including through acts or omissions of its officers, employees, agents or representatives, may be independently liable for any of the damages suffered or claimed by plaintiffs" and requiring Garza to "represent[] that [he] knows of no facts or circumstances which would or could suggest that an independent claim of liability exists against [Garza] for the acts or omissions of [Garza], its officers, employees, or agents" is consistent with section 82.002(a). And, nothing in section 82.002 prevents a manufacturer from requiring a waiver of any conflict of interest that may arise from shared legal representation.

In *Victoria Bank & Trust Co. v. Brady*, the Texas Supreme Court held that "[i]n order to effectively release a claim in Texas, the releasing instrument must 'mention' the claim to be released. Even if the claims exist when the release is executed, any claims not clearly within the subject matter of the release are not discharged." 811 S.W.2d 931, 938 (Tex. 1991). In *Brady*, the borrower and its bank reached a settlement agreement releasing the parties from all claims arising out of a loan transaction. *Id.* at 934. The borrower later sued the bank based on a claim that arose out of the bank's alleged tortious interference with the business relationship between the borrower and a buyer of the borrower's cattle. *Id.* at 934-35. The Court held that the borrower was not barred from asserting its claim against the bank because the claim—which was completely unrelated to the loan transaction—was "not mentioned or clearly within the subject matter of the settlement agreement" and thus had not been released. *Id.* at 939.

In *Keck, Mahin & Cate v. National Union Fire Ins. Co.*, 20 S.W.3d 692, 697 (Tex. 2000), the Supreme Court considered whether an insured's release of attorney's fees was limited to unpaid fees or applied to all malpractice claims attributable to legal services rendered during a specified period. The *Keck* Court concluded that its decision in *Brady* did not control the construction of the release at issue. *See id.* at 698. In doing so, it stated:

> The present release is clearly broader than the one in *Brady*. It is not expressly limited to a specific claim or transaction but rather purports to cover "all demands, claims or causes of action of any kind whatsoever." Nothing in *Brady* forbids such a broad-form release. *Brady* simply holds that the release must "mention" the claim to be effective . . . . It does not require that the parties anticipate and identify each potential cause of action relating to the release's subject matter.

*Id.*

Here, although the agreement does not specifically mention a statutory right to indemnification under section 82.002, neither does it limit itself to only indemnification claims independent of the statute. The agreement broadly encompasses all costs of Garza's defense and the terms under which Ford assumes those costs. Neither the common law nor section 82.002 prevents parties from entering into their own indemnification agreement. *See ASI Tech.*, 75 S.W.3d 548-49 (holding that, under unambiguous language of settlement agreement, party waived its statutory indemnity rights as a matter of law); *cf. Wayne v. A.V.A. Vending, Inc.*, 52 S.W.3d 412, 417-18 (Tex. App.—Corpus Christi 2001, pet. denied) ("parties are free to make a contractual agreement for attorney's fees with more liberal standards (or more strict) than that of section 38 of the civil practices and remedies code"). Also, the agreement contains no provision under which Garza reserved his right to statutory indemnity. Parties are entitled to select the terms and provisions they want included in a contract before executing it. *ASI Tech.*, 75 S.W.3d 549. In so choosing, each party is entitled to rely upon the words selected to define their respective

obligations and rights. *Id.* "'In short, the parties strike the deal they choose to strike and, thus, voluntarily bind themselves in the manner they choose.'" *Id.* (citation omitted).

The agreement allowed Ford to re-tender the defense if Ford became "aware of allegations of, or evidence of, [Garza's] negligence or independent liability" or "because of discovery of any facts knowingly withheld by [Garza]," and required Garza to reimburse Ford for any fees and expenses incurred on Garza's behalf during the period of assumption. Garza's attorney understood this risk and, for that reason, waited until the close of the Aguilars' evidence at which point no there had been no "discovery of any facts knowingly withheld by" Garza and Ford could not re-tender the defense back to Garza:

> Well, I want — I want them to know that I've accepted it and so has Mr. Garza. Which is why I wanted to wait, because they have tendered this [the agreement] some time ago with the caveat that if Florentino Garza somehow modified the product or committed independent acts of negligence, then they would give the defense back to me. Now, at the conclusion of the Plaintiffs' evidence, I'm filing [Garza's acceptance of the agreement] with the Court and notifying Ford that we hereby accept.

In doing so, Garza chose to forego Ford's assumption of his defense costs prior to his acceptance of the agreement. Allowing Garza to now assert a previous right to indemnification under section 89.002 would render the unambiguous terms of the agreement meaningless. For these reasons, we conclude the trial court did not err in rendering summary judgment in favor of Ford.

## ATTORNEY'S FEES

Ford counter-claimed that Garza's demand and cross-claim for attorney's fees constituted a breach of the agreement, and requested attorney's fees pursuant to Texas Civil Practice and Remedies Code section 38.001, which allows for attorney's fees in a breach of contract suit. Ford later added a request for a declaratory judgment on the terms of the agreement, and requested attorney's fees pursuant Texas Civil Practice and Remedies Code section 37.009, which allows for

attorney's fees in a declaratory judgment action. The trial court awarded Ford its attorney's fees in the amount of $20,375.41 without stating the statutory ground for the award. In his final issue on appeal, Garza asserts Ford is not entitled to attorney's fees under either statute.

The Declaratory Judgment Act provides as follows:

(a) A person interested under a . . . written contract, . . . or whose rights, status, or other legal relations are affected by a statute, . . . [or] contract . . . may have determined any question of construction or validity arising under the instrument, statute, [or] contract . . . and obtain a declaration of rights, status, or other legal relations thereunder.

(b) A contract may be construed either before or after there has been a breach.

TEX. CIV. PRAC. & REM. CODE ANN. § 37.004(a), (b) (West 2008). "In any proceeding under this chapter, the court may award costs and reasonable and necessary attorney's fees as are equitable and just." *Id.* § 37.009.

Declaratory judgments are permissible even when a breach of contract claim is available because such a prohibition would "negate the Act's explicit terms covering such claims." *MBM Fin. Corp. v. Woodlands Operating Co.*, 292 S.W.3d 660, 669 (Tex. 2009). However, "a party cannot use the Act as a vehicle to obtain otherwise impermissible attorney's fees." *Id.* Therefore, a party may not replead a claim as a declaratory judgment claim merely to justify a fee award. *Id.* at 670 ("when a claim for declaratory relief is merely tacked onto a standard suit based on a matured breach of contract, allowing fees under Chapter 37 would frustrate the limits Chapter 38 imposes on such fee recoveries").

Garza's cross-claim asserted he was entitled to indemnity from Ford for his court costs and reasonable attorney's fees pursuant to section 82.002. Garza did not mention the agreement in his cross-claim. In its counter-claim, Ford asserted Garza breached the express terms of the agreement by filing his cross-claim. Ford also requested a declaration that Garza's section 82.002 claim was fully satisfied, discharged, or otherwise waived by the agreement and Garza was responsible for

his attorney's fees incurred prior to September 29, 2011. The interpretation of the agreement impacted both of Ford's claims. However, even if Ford did not prevail on its breach of contract claim, Ford was still entitled to a judgment declaring the parties' "rights, status, or other legal relations" under the agreement. Therefore, we do not believe Ford used the Declaratory Judgment "Act as a vehicle to obtain otherwise impermissible attorney's fees." *Id.* at 669. Accordingly, we cannot say the trial court abused its discretion in awarding Ford attorney's fees under section 37.009. For this reason, we need not address whether Ford was entitled to fees on its breach of contract claim.

**CONCLUSION**

We overrule Garza's issues on appeal and affirm the trial court's judgment.

Sandee Bryan Marion, Justice