

# IN THE
# TENTH COURT OF APPEALS

### No. 10-21-00297-CV

**LEWIS WRIGHT,**

                                        **Appellant**

 **v.**

**JEAN JONES, INDIVIDUALLY, AND
DOROTHY SHARKEY, AS NEXT FRIEND
AND AGENT OF JEAN MARIE WRIGHT,**

                                        **Appellees**

---

**From the 13th District Court
Navarro County, Texas
Trial Court No. D19-28471-CV**

---

## OPINION

---

In two issues, appellant, Lewis Wright, complains about a judgment rendered in favor of appellees, Jean Jones, individually, and Dorothy Sharkey, as next friend and agent of Jean Marie Wright, involving property located in Navarro County, Texas.[1]

---

[1] Jean Wright is the mother of Jean Jones and the step-mother of Dorothy Sharkey.

Specifically, Lewis contends that the trial court erred by denying him a one-half interest in and the right to possess and use the property located in Navarro County, which Lewis's father, Billy Wright, conveyed to him. We reverse and render, in part, and reverse and remand, in part.

## Background

On January 23, 2015, Billy and Jean Wright, Lewis's stepmother, jointly executed a General Warranty With Enhanced Life Estate (Lady Bird Deed). The Lady Bird Deed conveyed to Lewis the family home and ten acres located in Navarro County, subject to the following reservation:

> For Grantor and Grantor's assign, a reservation of a life estate without any liability for waste, with full power and authority to sell, convey, mortgage, lease, and otherwise dispose of the Property in fee simple, with or without consideration, without joinder by the remaindermen and to retain absolutely any and all proceeds derived therefrom. Grantor shall also have full power and authority to revoke, amend, divest, replace, change or otherwise alter the designation of remaindermen without joinder by the remaindermen.

Billy and Jean Wright were identified as the grantors, and they both signed the deed. The deed identified Lewis as the sole grantee.

On March 1, 2015, Billy passed away. Following his death, the family sought to probate his will. Both Billy and Jean Wright executed reciprocal wills that left their entire estate to the surviving spouse.

On May 12, 2016, Jean Wright signed a durable power of attorney appointing Dorothy as her "agent (attorney-in-fact)" to act on Jean Wright's behalf regarding real

property transactions and estate, trust, and other beneficiary transactions, among other things.

On August 13, 2018, Dorothy, as Jean Wright's attorney-in-fact, executed a revocation of the Lady Bird Deed. Both Dorothy and Jean Wright signed the revocation document. On March 5, 2020, Dorothy, as Jean Wright's attorney-in-fact, signed an additional revocation of the Lady Bird Deed. Both the August 13, 2018 and the March 5, 2020 revocations identified Lewis as the sole beneficiary or grantee and sought to "cancel and revoke any and all interests of Grantee in the Property, including all present, future, remainder, and contingent interests."

Thereafter, Jean Jones filed suit against Lewis, asserting a trespass claim and requesting injunctive relief. In her original petition, Jean Jones alleged the following:

> Since October 1, 2018, Plaintiff [Jean Jones] has resided at her mother's house at 15421 Highway 31 East, Kerens, Texas 75144. On October 9, 2019, Plaintiff returned to her place of residence at 15421 Highway 31 East, Kerens, Texas 75144 after visiting friends and family out of town for a few days. When Plaintiff arrived at her home, the gate to the entrance of the property was locked, so she had to climb over the gate to enter the property. When Plaintiff tried to enter the home, her key no longer fit in the locks on the doors of the house. Plaintiff attempted to contact her brother, Lewis Wright, who lives at their mother's home with her, but he failed to answer the phone. When Plaintiff eventually got into contact with her brother, Defendant, Lewis Wright, he informed Plaintiff that she would no longer be allowed to live there and she could only gather her belongings and leave. He had changed the locks on the door. Since that time, Defendant has refused to allow plaintiff to enter her residence.

In an affidavit attached to her original petition, Jean Jones indicated that Jean Wright now resides in a nursing home in Ennis, Texas.

Lewis filed an original answer generally denying the allegations made by Jean Jones. Thereafter, Jean Jones filed a supplemental petition adding Dorothy, as next friend and agent of Jean Marie Wright, as a plaintiff. In their supplemental petition, Jean Jones and Dorothy reasserted the trespass cause of action and request for injunctive relief and also requested declarations that the August 13, 2018 and March 5, 2020 revocations were effective; that Lewis "has no present, future, or remainder interest in the property"; that Jean Wright owns the entire property in fee simple; that no interest in the property passed on the death of Billy; that Jean Wright has the sole present right of possession of the property; and that Jean Wright has the exclusive right to grant permission to others to enter the property. Lewis filed a counterpetition requesting declarations that "the interest in the real property described in the attached deed vested in Lewis Allen Wright on March 1, 2015[,] upon the passing of Billy J. Wright; and . . . That Lewis Allen Wright owns said property in fee simple."

After a bench trial, the trial court rendered judgment in favor of Jean Jones and Dorothy on their trespass claim and awarded $6,319.92 in damages. The trial court also granted a declaratory judgment in favor of Jean Jones and Dorothy as follows:

- "The Revocation of General Warranty Deed with Enhanced Life Estate (Lady Bird Deed) admitted into evidence as Exhibit P-3 in this cause was effective."

- "Jean M. Wright owns the property made the subject of this litigation and described in Exhibit P-1, admitted in this cause, in fee simple."

- "Jean M. Wright has the sole present right of possession of the property made the subject of this litigation and described in Exhibit P-1, admitted into evidence in this cause."

- "Jean M. Wright has the exclusive right to grant permission to others to enter the property the property [sic] made the subject of this litigation and described in Exhibit P-1, admitted into evidence in this cause."

Lewis filed a motion for new trial, and a request for findings of fact and conclusions of law. Lewis's motion for new trial was overruled by operation of law, and the trial court did not make any findings of fact and conclusions of law. *See* TEX. R. CIV. P. 329b(c). This appeal followed.

## The Lady Bird Deed

In two issues, which we will consider together, Lewis contends that the trial court erred by concluding that he does not have a one-half ownership interest in the property based on the Lady Bird Deed and by concluding that he does not have the right to possess and use the property.

STANDARD OF REVIEW

The purpose of a declaratory-judgment action is to establish the existing rights, status, or other legal relationships between the parties. *City of El Paso v. Heinrich*, 284 S.W.3d 366, 370 (Tex. 2009); *see* TEX. CIV. PRAC. & REM. CODE ANN. § 37.009(b). Suits for declaratory judgment are intended to determine the rights of parties when a controversy has arisen, but before any wrong has been committed. *See Armstrong v. Hixon*, 206 S.W.3d

175, 179 (Tex. App.—Corpus Christi 2006, pet. denied); *see also Montemayor v. City of San Antonio Fire Dep't*, 985 S.W.2d 549, 551 (Tex. App.—San Antonio 1998, pet. denied).

Declaratory judgments are reviewed under the same standards as other judgments and decrees. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 37.010; *Hawkins v. El Paso First Health Plans, Inc.*, 214 S.W.3d 709, 719 (Tex. App.—Austin 2007, pet. denied). We look to the procedure used to resolve the issue at trial to determine the standard of review on appeal. *See Hawkins*, 214 S.W.3d at 719; *Armstrong*, 206 S.W.3d at 179; *see also City of Galveston v. Tex. Gen. Land Office*, 196 S.W.3d 218, 221 (Tex. App.—Houston [1st Dist.] 2006, pet. denied). Here, the trial court determined the declaratory-judgment issues after a bench trial; thus, we apply a sufficiency of the evidence review to the trial court's factual findings and review its conclusions of law de novo. *See Montfort v. Trek Res., Inc.*, 198 S.W.3d 344, 354 (Tex. App.—Eastland 2006, no pet.) (citing *Black v. City of Killeen*, 78 S.W.3d 686, 691 (Tex. App.—Austin 2002, pet. denied)).

When no findings of fact are filed, as in this case, the reviewing court implies all necessary findings to support the judgment. *Tarrington Co. v. Stutzman*, 46 S.W.3d 829, 842 (Tex. 2000). Implied findings of fact, like the trial court's findings, may be challenged for legal and factual sufficiency. *McCord v. Goode*, 308 S.W.3d 409, 412-13 (Tex. App.—Dallas 2010, no pet.). The standard of review is the same as that applied to a jury's findings and a trial court's findings of fact. *Affordable Power, L.P. v. Buckeye Ventures, Inc.*, 347 S.W.3d 825, 829 (Tex. App.—Dallas 2011, no pet.). However, where no findings of

fact were entered, the trial court's judgment will be affirmed if it can be upheld upon any basis that has support in the record under any theory of law applicable to the case. *Id.* at 829-30.

When the challenging party, Lewis here, did not have the burden of proof at trial, the party challenging the legal sufficiency of the evidence, again Lewis, must demonstrate on appeal that there is no evidence to support the trial court's adverse findings. *Croucher v. Croucher*, 660 S.W.2d 55, 58 (Tex. 1983). Under the no-evidence standard of review, we view the evidence in the light most favorable to the trial court's findings, "credit[ing] favorable evidence if reasonable [fact finders] could, and disregard[ing] contrary evidence unless reasonable [fact finders] could not." *City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005). We must indulge every reasonable inference that would support the trial court's findings. *Id.* at 822. "The final test for legal sufficiency must always be whether the evidence at trial would enable reasonable and fair-minded people to reach the decision under review." *Id.* at 827.

For his factual-sufficiency challenge, Lewis must demonstrate there is insufficient evidence to support the adverse finding. *Pulley v. Milberger*, 198 S.W.3d 418, 426 (Tex. App.—Dallas 2006, pet. denied). In reviewing a factual-sufficiency challenge, we consider and weight all of the evidence in support of and contrary to the trial court's finding and will set aside the finding only if the evidence supporting the finding is so slight, or the evidence against it so strong, that the finding is clearly wrong and unjust.

*See Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986) (per curiam). The amount of evidence necessary to affirm a judgment is far less than that necessary to reverse a judgment. *See Pulley*, 198 S.W.3d at 427.

In a bench trial, the trial court, as the factfinder, is the sole judge of the credibility of the witnesses and the weight to be given their testimony. *McGalliard v. Kuhlmann*, 722 S.W.2d 694, 697 (Tex. 1986); *see City of Keller*, 168 S.W.3d at 819. The trial court may take into consideration all the facts and surrounding circumstances in connection with the testimony of each witness and accept or reject all or any part of that testimony. *See Weisfeld v. Tex. Land Fin. Co.*, 162 S.W.3d 379, 380-81 (Tex. App.—Dallas 2005, no pet.).

APPLICABLE LAW

The resolution of these issues necessarily requires us to interpret the language of the Lady Bird Deed.[2] In construing a written agreement, we must ascertain and give effect to the parties' intentions as expressed in the agreement. *Frost Nat'l Bank v. L&F Distribs., Ltd.*, 165 S.W.3d 310, 311-12 (Tex. 2005) (per curiam); *Carbona v. CH Med., Inc.*, 266 S.W.3d 675, 680 (Tex. App.—Dallas 2008, no pet.); *see Terrill v. Tuckness*, 985 S.W.2d 97, 101 (Tex. App.—San Antonio 1998, no pet.) (noting that the rules of contract construction apply to the construction of deeds). We discern intent from the agreement itself, and the agreement must be enforced as written. *Deep Nines, Inc. v. McAfee, Inc.*, 246

---

[2] Subsequent to oral argument, we requested amicus curiae briefs from several learned sources on Lady Bird Deeds. To date, we have not received any amici briefs in response to our request.

S.W.3d 842, 846 (Tex. App.—Dallas 2008, no pet.); *see French v. Chevron U.S.A., Inc.*, 896 S.W.2d 795, 797 (Tex. 1995) ("Because 'once a dispute arises over meaning, it can hardly be expected that the parties will agree on what meaning was intended,' courts use canons of construction to help ascertain the parties' intent." (quoting *Southland Royalty Co. v. Pan Am. Petroleum Corp.*, 378 S.W.2d 50, 59 (Tex. 1964) (Calvert, C.J., concurring))). We consider the entire writing and attempt to harmonize and give effect to all the provisions of the contract by analyzing the provisions with reference to the whole agreement. *Frost Nat'l Bank*, 165 S.W.3d at 312. This consideration comes "'from a utilitarian standpoint bearing in mind the particular business activity sought to be served,'" and we will "'avoid when possible and proper a construction which is unreasonable, inequitable, and oppressive.'" *Id.* (quoting *Reilly v. Rangers Mgmt., Inc.*, 727 S.W.2d 527, 530 (Tex. 1987)). And, "[i]t is a rule of construction of deeds that they are to be most strongly construed against the grantor and in favor of the grantee, and this rule applies to reservations and exceptions." *Commerce Trust Co. v. Lyon*, 284 S.W.2d 920, 921 (Tex. Civ. App.—Fort Worth 1955, no writ).

DISCUSSION

Here, the Lady Bird Deed provided that "Billy J. Wright, also known as Billy Joe Wright, joined herein by his spouse, Jean M. Wright" were joint grantors.[3]  Lewis was named as the grantee.  The deed describes the grant as follows:

> Grantor, for the Consideration and subject to the Reservations from Conveyance and the Exceptions to Conveyance and Warranty, grants, sells, and conveys to Grantee the Property; together with all and singular the rights and appurtenances thereto in any way belonging, to have and to hold it to Grantee and Grantee's heirs, successors, and assigns forever.

The deed also contained the following reservation from the grant:

> For Grantor and Grantor's assign, a reservation of a life estate without any liability for waste, with full power and authority to sell, convey, mortgage, lease, and otherwise dispose of the Property in fee simple, with or without consideration, without joinder by the remaindermen and to retain absolutely any and all proceeds derived therefrom.  Grantor shall also have full power and authority to revoke, amend, divest, replace, change or otherwise alter the designation of remaindermen without joinder by the remaindermen.

The reservation clause of the Lady Bird Deed unambiguously created life estates for both Billy and Jean, as joint grantors.  Ordinarily, when a life estate is measured by two or more persons, the life estate ceases upon the death of the last party.  *Neely v. Brogdon*, 214 S.W. 614, 615-16 (Tex. Civ. App.—Austin 1919) ("A life estate is one which may last during the life or lives of one or more persons in being. . . .  A testator may create

---

[3] Although the Lady Bird Deed uses the term "Grantor" to describe Billy and Jean, the Lady Bird Deed specifically states that Jean joins Billy as grantor and that "[w]hen the context requires, singular nouns and pronouns include the plural."  Thus, it appears that Billy and Jean were joint grantors of the property in question.

successive life estates in the same property, as where he gives to a named beneficiary for life, and then to another for life, and so on to any number of persons, provided that are persons in being at the time the will take effect, each such estate to begin upon the termination of a preceding life estate."), *aff'd*, 239 S.W. 192 (Tex. Comm'n App. 1922); *see Gutierrez v. Stewart Title Co.*, 550 S.W.3d 304, 315 n.8 (Tex. App.—Houston [14th Dist.] 2019, no pet.); *see also Estate of McWhorter v. Wooten*, 593 S.W.2d 366, 370 (Tex. Civ. App.— Waco 1979) (noting that, in the context of limitations, a life estate terminates on the death of the "last grantor"), *aff'd*, 622 S.W.2d 844 (Tex. 1981).

However, we must be mindful of the fact that the Lady Bird Deed did not expressly create successive life estates that began upon the termination of a preceding life estate. Moreover, we recognize that Billy and Jean were married, and property owned by a married person is presumed to be community property. *See* TEX. FAM. CODE ANN. § 3.003(a). Each spouse owns a one-half undivided interest in community property. *Farmers Tex. County Mut. Ins. Co. v. Okelberry*, 525 S.W.3d 786, 794 (Tex. App.—Houston [14th Dist.] 2017, pet. denied) (citing *In re Worth*, 100 B.R. 834, 840 (Bankr. N.D. Tex. 1989) ("Under Texas community property law, [community] property is considered as owned during the marriage one-half by the husband and one-half by the wife."); *Carnes v. Meador*, 533 S.W.2d 365, 371 (Tex. Civ. App.—Dallas 1975, writ ref'd n.r.e.) ("[E]ach spouse owns a one-half interest in all community funds regardless of which spouse has management and control.")). As such, one spouse can dispose only of that spouse's one-

half interest in community property. *See Haile v. Holtzclaw*, 414 S.W.2d 916, 922 (Tex. 1967) ("Another principle pertinent to the case now before us and deeply embedded in the law is the presumption that a testator only intended to dispose of that which was his. This presumption may only be overcome by language which clearly and without equivocation manifests a contrary intent."); *Avery v. Johnson*, 108 Tex. 294, 304-05, 192 S.W. 542, 545 (1917).

Reconciling Texas community-property law with the language of the Lady Bird Deed in this case yields a conclusion that Billy and Jean each reserved a life estate in their respective one-half interest in the property. And most importantly, there is no language in the Deed stating that upon the death of either Billy or Jean Wright, the deceased spouse's one-half interest would be conveyed to the surviving spouse for the remainder of their life. *See Terrell v. Graham*, 576 S.W.2d 610, 612 (Tex. 1979) (noting that where brothers each owned an undivided one-half interest in a parcel of land and each executed a deed stating that the other would take on the granting brother's death, the surviving brother became the fee owner of the entire parcel upon the decedent brother's death because that was the intent reflected by the language of the deeds); *see also Haile*, 414 S.W.2d at 922 (noting the presumption that a testator only intends to dispose of that which is his and that the presumption may only be overcome with language that "clearly and without equivocation manifests a contrary intent"). Instead, Billy's one-half interest vested in Lewis immediately when Billy died. *See Lacey v. Floyd*, 87 S.W. 665, 667 (1905)

("[F]or every life estate must in regular course terminate at the death of the life tenant, and the persons designated to take the remainder must take 'at his death' . . . ."); *Crist v. Morgan*, 245 S.W. 659, 661 (Tex. Comm'n App. 1922) (same); *see also Cleaver v. Knighton*, 127 S.W.2d 958, 962 (Tex. Civ. App.—Beaumont 1939, no writ) (noting that a life tenant who is still living, who through her deed purports to convey a fee simple estate, conveys only her life estate and that the right of possession of the remaindermen does not vest until her death); *Davis v. Zeanon*, 111 S.W.2d 772, 773 (Tex. Civ. App.—Waco 1937, writ ref'd) ("At common law, an estate in remainder, expectant on the death of the grantor, could not be created, but in this case, by virtue of a special statutory provision, an estate in land may be created by deed to commence in the future. The grantor's death may be designated as the time when the estate is to fall into possession. Upon such death, a complete title, in the sense of a right to present enjoyment of the estate, becomes vested in the grantee, unless the right to make other disposition of the property has been reserved by the grantor." (citations omitted)).

Therefore, because the Deed did not include language conveying Billy's one-half interest to Jean Wright upon his death and resulted in title vesting in Lewis immediately upon Billy's death, neither revocation of the Lady Bird Deed executed by Dorothy, as

Jean Wright's attorney-in-fact, was effective as to Billy's one-half interest that vested in Lewis.[4]

Despite the foregoing, Jean Jones and Dorothy rely on Billy and Jean Wright's reciprocal wills to confirm their intent to leave everything to the other upon their death. We note that extrinsic evidence of intent is admissible only if the deed is ambiguous on its face. *See Friendswood Dev. Co. v. McDade & Co.*, 926 S.W.2d 280, 283 (Tex. 1996); *see also CenterPoint Energy Houston Elec., L.L.P. v. Old TJC Co.*, 177 S.W.3d 425, 431 (Tex. App.—Houston [1st Dist.] 2005, pet. denied) ("A court may consider the parties' interpretations of the contract through extrinsic or parol evidence only after a contract is first determined to be ambiguous."). A mere disagreement about the proper interpretation of a deed, however, does not make the deed ambiguous; the instrument is ambiguous only if, after application of the rules of construction, the deed is reasonably susceptible to more than one meaning. *Brown v. Havard*, 593 S.W.2d 939, 942 (Tex. 1980); *Universal C.I.T. Credit Corp. v. Daniel*, 150 Tex. 513, 243 S.W.2d 154, 157 (1951). We do not find the language in the Lady Bird Deed in this case to be ambiguous, and as such, we may not consider the

---

[4] We note that there is not much Texas case law interpreting Lady Bird Deeds. However, at least one commentator has observed that "[m]any use 'Lady Bird' and 'transfer on death' to refer to the same thing." *See* Lucy Wood, *Transfer on Death Deeds in Texas: High Time for the TODD*, 9 TEX. TECH EST. PLAN COM. PROP. L.J. 59, 71 (2016). Although there are some distinct differences between non-statutory Lady Bird Deeds and statutory Transfer on Death Deeds ("TODDs"), both are designed to transfer property on death without probate. And interestingly, section 114.057 of the Texas Estates Code, which pertains to TODDs, specifically provides that: "If a transfer on death deed is made by more than one transferor, revocation by the transferor does not affect the deed as to the interest of another transferor who does not make that revocation." TEX. ESTATES CODE. ANN. § 114.057(d). Additionally, the Texas Estates Code states that: "A transfer on death deed made by joint owners with right of survivorship is revoked only if it is revoked by all of the living joint owners." *Id.* § 114.057(e).

parties' reciprocal wills to ascertain the intent of the parties in this Deed. *See, e.g.,* TEXAS ESTATE PLANNING § 5.113 (noting that for property subject to a Lady Bird Deed, "the client must remember that the disposition of his home is no longer governed by his will, and any change of beneficiary must be done through a new deed"). And even if we considered the wills, Billy's one-half interest would have already vested in Lewis and, thus, would not have been considered a part of Billy's estate at the time the will was probated.

Based on the foregoing, we conclude that title to Billy's one-half interest in the property vested in Lewis immediately upon Billy's death. This means that Lewis and Jean Wright's successors-in-interest are cotenants in the property at issue. *See Laster v. First Huntsville Props. Co.*, 826 S.W.2d 125, 129 (Tex. 1991) ("A cotenancy is formed when two or more persons share the unity of exclusive use and possession in property held in common."). Furthermore, Jean Wright and her successors-in-interest did not have authority to revoke the Lady Bird Deed as to Billy's interest that vested in Lewis. The trial court erred by concluding otherwise. Therefore, applying the appropriate standards, we conclude that the trial court's declaratory judgment is not supported by legally and factually sufficient evidence. *See City of Keller*, 168 S.W.3d at 822, 827; *Croucher*, 660 S.W.2d at 58; *see also Cain*, 709 S.W.2d at 176.

And because the finding of trespass damages is based on the trial court's erroneous determination that Lewis did not own a one-half undivided interest in the property,

sustaining the complaint in issue one necessarily requires that issue two, which challenges the determination that Lewis did not have a right of immediate possession and resulted in a finding of damages for trespass, must also be sustained. *See Env't Processing Sys., L.C. v. FPL Farming Ltd.*, 457 S.W.3d 414, 419 (Tex. 2015) (noting that the Texas Supreme Court "has consistently defined a trespass as encompassing three elements: (1) entry (2) onto the property of another (3) without the property owner's consent or authorization."); *Barnes v. Mathis*, 353 S.W.3d 760, 764 (Tex. 2011) ("Trespass to real property is an unauthorized entry upon the land of another, and may occur when one enters—or causes something to enter—another's property."); *Todd v. Bruner*, 365 S.W.2d 155, 160 (Tex. 1963) (per curiam) ("Any cotenant has a right to be in the possession of property in which he owns an interest."). Accordingly, we sustain Lewis's issues on appeal.

## Conclusion

We reverse, in part, the judgment of the trial court and render judgment that Lewis has a one-half interest in the property and that the revocations executed by Dorothy on Jean Wright's behalf were ineffective as to Lewis's interest, which immediately vested in Lewis upon Billy's death. Furthermore, we reverse the portion of the trial court's judgment awarding trespass damages to Jean Jones, individually, and Dorothy Sharkey, as next friend and agent of Jean Marie Wright, and remand for proceedings consistent with this opinion.

STEVE SMITH
Justice

Before Chief Justice Gray,
     Justice Johnson,
     and Justice Smith
Reverse and render, in part, and reverse and remand, in part
Opinion delivered and filed July 26, 2023
[CV06]

