**Affirm in part; Reverse and Render in part; Opinion Filed March 29, 2019.**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-18-00183-CV

**AZTEC SYSTEMS, INC. AND GLENDONTODD CAPITAL, LLC, Appellants**
**V.**
**NICK PREVETT, Appellee**

**On Appeal from the 44th Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. DC-15-13630**

# MEMORANDUM OPINION

Before Justices Myers, Osborne, and Nowell
Opinion by Justice Osborne

After a jury trial, the trial court rendered judgment for appellee Nick Prevett on his claim for breach of contract against appellant Aztec Systems, Inc. The trial court also rendered judgment against appellant glendonTodd Capital, LLC, based on the jury's finding that glendonTodd was engaged in a joint enterprise with Aztec. Aztec and glendonTodd appeal, arguing that the evidence was legally and factually insufficient to support the jury's findings, and that the trial court erred by overruling their motion for directed verdict, objections to the charge, motion for judgment notwithstanding the verdict, and motion for new trial. We conclude the evidence is legally and factually sufficient to support the jury's findings against Aztec, but not against glendonTodd. Accordingly, we affirm the trial court's judgment in part, and reverse and render in part.

BACKGROUND

Aztec sells and implements information technology packages and provides hosting services for businesses. Aztec hired Prevett in July 2013. Prevett had experience working with "NAV" software for businesses, one of the products Aztec sells. Prevett's duties for Aztec included selling products and consulting with clients. His salary was $85,000 annually plus commissions. For the first few months of his employment, Prevett's responsibilities were in sales. But when Aztec decided to implement the NAV system for its own internal use, Prevett began spending approximately half of his time working on the implementation. David Boone joined Aztec in October 2014 as its chief executive officer, and became Prevett's direct supervisor.

Prevett is a citizen of the United Kingdom. At the time he was hired by Aztec, Prevett was living and working in the United States under an H1B visa that was due to expire on February 21, 2015. Prevett and Aztec agreed that Aztec would sponsor Prevett to obtain a green card after his visa expired so that Prevett could continue his employment with Aztec.

Prevett's visa expired on February 21, 2015. He stopped working at Aztec's offices. According to Boone, he and Prevett "had discussed [Prevett's] role as a contractor and how he would continue and how possibly he could make money while he was not an employee." Prevett testified that he became a consultant to Aztec, working on a contract basis. According to Prevett, his duties did not change. He worked on the NAV implementation and visited clients. But Boone testified that his discussion with Prevett was limited to the possibility that Previtt could be paid a commission if he brought new business in to the company and could be reimbursed for his expenses incurred on sales calls.

Aztec did not pay Prevett for his services or reimburse his expenses after February 21, 2015. Prevett sued Aztec and glendonTodd for breach of contract, seeking $33,825.33 for services provided and $8,267.06 in "unreimbursed out of pocket expenses incurred." In the alternative,

Prevett alleged a cause of action in quantum meruit for the value of his services. Prevett also alleged that Aztec and glendonTodd "were acting as a joint enterprise at all relevant times." The case proceeded to trial before a jury in July, 2017.

The jury found:

(1) Prevett and Aztec agreed that Prevett would provide consulting services in exchange for reasonable compensation after February 21, 2015 (Question 1 of the jury charge);

(2) Aztec failed to comply with that agreement (Question 2);

(3) Prevett "perform[ed] compensable work" for Aztec "for which he was not compensated" (Question 3);

(4) the sums of $33,825.33 for services rendered and $8,267.06 for expenses would fairly and reasonably compensate Prevett for his damages resulting from Aztec's failure to comply (Question 4);

(5) the reasonable value of Prevett's compensable work at the time and place it was performed was $33,825.33 (Question 5); and

(6) Aztec and glendonTodd were engaged in a joint enterprise "[w]ith regard to services provided" by Prevett "and the failure to pay for those services." (Question 6)

The trial court overruled Aztec's and glendonTodd's motion for judgment notwithstanding the verdict and rendered judgment for Prevett on the amounts found by the jury plus attorney's fees found by the court, interest, and costs. The court denied Aztec's and glendonTodd's motion for reconsideration or for new trial. This appeal followed.

In five of their six issues, Aztec and glendonTodd challenge the legal and factual sufficiency of the evidence to support the jury's answers to Questions 1, 2, 4, 5, and 6 of the charge. In each issue, Aztec and glendonTodd also contend the trial court erred by overruling their objections to the charge; by submitting each question to the jury; by overruling their motions for directed verdict, judgment notwithstanding the verdict, and new trial; and by granting judgment in Prevett's favor. In their remaining issue, Aztec and glendonTodd challenge the trial court's award of attorney's fees on the ground that Prevett was not entitled to judgment on his underlying breach of contract and quantum meruit claims.

## STANDARDS OF REVIEW

When a party attacks the legal sufficiency of the evidence to support an adverse finding on which it did not have the burden of proof at trial, it must demonstrate there is no evidence to support the adverse finding. *Exxon Corp. v. Emerald Oil & Gas Co., L.C.*, 348 S.W.3d 194, 215 (Tex. 2011); *Croucher v. Croucher*, 660 S.W.2d 55, 58 (Tex. 1983). In determining whether the evidence is legally sufficient to support a finding, we consider the evidence in the light most favorable to the judgment and indulge every reasonable inference that would support it. *City of Keller v. Wilson*, 168 S.W.3d 802, 822 (Tex. 2005). We must credit favorable evidence if a reasonable factfinder could and disregard contrary evidence unless a reasonable factfinder could not. *Id.* at 807, 827. "The final test for legal sufficiency must always be whether the evidence at trial would enable reasonable and fair-minded people to reach the verdict under review." *Id.* at 827.

A complaint that the evidence is legally insufficient will be sustained when: (a) there is a complete absence of evidence of a vital fact; (b) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact; (c) the evidence offered to prove a vital fact is no more than a mere scintilla; or (d) the evidence establishes conclusively the opposite of the vital fact. *See id.* at 810; *King Ranch, Inc. v. Chapman*, 118 S.W.3d 742, 751 (Tex. 2003). "Anything more than a scintilla of evidence is legally sufficient to support the finding." *Formosa Plastics Corp. v. Presidio Eng'rs & Contractors, Inc.*, 960 S.W.2d 41, 48 (Tex. 1998). There is more than a scintilla of evidence "when the evidence as a whole rises to a level enabling reasonable and fair-minded people to have different conclusions." *Waste Mgmt. of Tex., Inc. v. Tex. Disposal Sys. Landfill, Inc.*, 434 S.W.3d 142, 156 (Tex. 2014). "However, if the evidence is so weak that it only creates a mere surmise or suspicion of its existence, it is regarded as no evidence." *Id.*

In a factual sufficiency review, we consider and weigh all of the evidence, both supporting and contradicting the finding. *Mar. Overseas Corp. v. Ellis*, 971 S.W.2d 402, 406–07 (Tex. 1998). We may set aside the finding only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *Id.* at 407; *Cain v. Bain*, 709 S.W.2d 175, 176 Tex. 1986) (per curiam).

The factfinder is the sole judge of the credibility of the witnesses and the weight to be given their testimony. *City of Keller*, 168 S.W.3d at 819 (legal sufficiency review); *Golden Eagle Archery, Inc. v. Jackson*, 116 S.W.3d 757, 761 (Tex. 2003) (factual sufficiency review). We may not substitute our own judgment for that of the factfinder merely because we might reach a different result. *City of Keller*, 168 S.W.3d at 819, 822; *Golden Eagle Archery, Inc.*, 116 S.W.3d at 761.

We review a trial court's rulings on motions for directed verdict and for judgment notwithstanding the verdict under a legal sufficiency standard. *See City of Keller*, 168 S.W.3d at 825.

We review a trial court's submission of jury questions for an abuse of discretion. *Janga v. Colombrito*, 358 S.W.3d 403, 408 (Tex. App.—Dallas 2011, no pet.). A trial court has wide discretion in submitting instructions and jury questions. *Id.* The trial court must submit a question that is raised by the written pleadings and the evidence, and may refuse to submit a properly requested question only if there is no evidence in the record to warrant its submission. *Id.*

We also review a trial court's denial of a motion for new trial for abuse of discretion. *Dugan v. Compass Bank*, 129 S.W.3d 579, 582 (Tex. App.—Dallas 2003, no pet.). A trial court abuses its discretion when it acts in an arbitrary or unreasonable manner, or acts without reference to any guiding rules or principles. *Id.*

DISCUSSION

**1. Sufficiency of the evidence to support the jury's answers to Questions 1, 2, 4 and 5**

In its first, second, third, and fifth issues, Aztec argues the trial court erred by overruling its motions and objections regarding Questions 1, 2, 4, and 5 of the jury charge and by rendering judgment for Prevett based on the jury's answers to those questions. As detailed above, these questions inquired whether Aztec and Prevett had an agreement, whether Aztec failed to comply with that agreement, and the amount of damages resulting from Aztec's failure to comply.

Prevett testified at length regarding the services he provided to Aztec after February 21, 2015. Among other activities, he made sales calls and worked on issues that arose with the NAV system. He testified about more than thirty emails admitted into evidence that he sent or received between February 21 and late May, 2015. The emails were sent to or from his Aztec email address and revealed that he was included in discussions with others at Aztec on a variety of issues, including problems with the NAV implementation. Many of the emails were from or copied to Boone. Prevett also testified to the expenses he incurred on Aztec's behalf, including trips to San Antonio and fees for company subscriptions that were charged to his credit card. Prevett calculated the amount due for his services by prorating his $85,000 annual salary for the dates he worked after February 21. He provided an itemized list of his expenses that was admitted into evidence.

The jury was instructed that in deciding whether Prevett and Aztec reached an agreement, "you may consider what they said and did in light of the surrounding circumstances, including any earlier course of dealing." *See Thornton v. Dobbs*, 355 S.W.3d 312, 316 (Tex. App.—Dallas 2011, no pet.) ("In determining the existence of an oral contract, the court looks to the communications between the parties and to the acts and circumstances surrounding the communications."). Aztec asserts there is no evidence the parties agreed that Prevett would provide consulting services to Aztec for reasonable compensation. Aztec argues that Prevett never used the word "reasonable"

–6–

in describing the amount he claimed to be due for his work. But there was evidence from which the jury could conclude that prorating Prevett's previously-negotiated salary as compensation for similar work after February 21 was reasonable.[1] Prevett testified that his salary was negotiated and reflected his work experience in the industry and his experience with NAV. He also testified that he performed the same functions before and after February 21. There was also evidence that Aztec's normal practice was to rescind an employee's email upon termination of employment, but Prevett retained and used his Aztec email after February 21 and used it in his communications with Boone and others.

Aztec contends the evidence does not support the jury's conclusion that Prevett's pre-February 21 salary was reasonable compensation after that date because "[c]ircumstances were different." Aztec argues that (1) there was no negotiated agreement; (2) Aztec was under new management; (3) Aztec was in dire financial condition; and (4) Prevett could no longer come to Aztec's offices. But the jury heard this evidence and was the sole judge of its credibility. *City of Keller*, 168 S.W.3d at 819–20; *Jackson*, 116 S.W.3d at 761. The jury also heard evidence that Boone decided to keep Prevett as an Aztec employee in the fall of 2014 even as he was terminating other Aztec employees due to concerns about Aztec's financial viability.

Boone conceded that after February 21, Prevett made "two or three trips" "that I had told him he could be reimbursed for." He testified, "In fact, I accompanied him on at least two sales calls that he made." Boone testified to his understanding that if Prevett incurred legitimate expenses on Aztec's behalf, Aztec would reimburse Prevett. Boone also testified that Prevett was "helping with issues that would come up with the NAV system." He explained, "[w]e converted to NAV in December of 2104, and Nick [Prevett] was one of the few people who actually knew

---

[1] *See EMC Mortg. Corp. v. Jones*, 252 S.W.3d 857, 869 (Tex. App.—Dallas 2008, no pet.) (op. on reh'g) (where term "unreasonable" was not defined in jury charge, jury could make its determination based on common understanding of word).

–7–

the system and helped kind of put it together. And so I think he was providing some support for that as well." He testified that the type of communications he had with Prevett did not change after February 21.

Boone testified that "I did rely on Nick over the course of [t]his period when he was no longer an employee to, A, help sell NAV business and, B, give thoughts on the business going forward." He "did not expect [Prevett] to do this for free." He said, "I would have expected him to get compensated something for this." Boone complained, however, that Prevett did not submit any invoices for payment before May, and then only submitted single-line item invoices for "consulting services" without any itemization or detail. Consequently, Prevett's invoices were not paid.

We conclude the evidence was legally and factually sufficient to support the jury's findings that (1) Prevett and Aztec agreed that Prevett would provide consulting services in exchange for reasonable compensation after February 21, 2015; (2) Aztec failed to comply with that agreement; (3) the sums of $33,825.33 for services rendered and $8,267.06 for expenses would fairly and reasonably compensate Prevett for his damages that resulted from Aztec's failure to comply; and (4) the reasonable value of Prevett's compensable work at the time and place it was performed was $33,825.33. Prevett offered testimony and documentation to support his claims. There was no evidence that Aztec paid Prevett for his services or expenses after February 21, 2015. Although Boone testified that Prevett and Aztec did not reach an agreement regarding Prevett's compensation after February 21, 2015, Boone conceded that Prevett provided at least some services and incurred expenses for which he should have been compensated.

Because the evidence at trial was sufficient to "enable reasonable and fair-minded people to reach the verdict under review," *City of Keller*, 168 S.W.3d at 827, the trial court did not err by submitting Questions 1, 2, 4, and 5 to the jury or by overruling Aztec's motions for directed verdict

and for judgment notwithstanding the verdict. *Id.* at 825 (rulings on motions for directed verdict and judgment notwithstanding the verdict reviewed under legal sufficiency standard); *Janga*, 358 S.W.3d at 408 (trial court may refuse to submit properly-requested question only if no evidence warrants its submission). Further, considering all of the evidence, the jury's findings in response to Questions 1, 2, 4, and 5 are not so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *See Ellis*, 971 S.W.2d at 407; *Cain*, 709 S.W.2d at 176. Nor did the trial court act without reference to guiding rules and principles by overruling Aztec's motion for new trial where there was legally and factually sufficient evidence to support the jury's findings. *See Dugan*, 129 S.W.3d at 582. We decide Aztec's and glendonTodd's first, second, third, and fifth issues against them.

**2. Attorney's fees**

In their fourth issue, Aztec and glendonTodd argue that "if [appellants] prevail on this appeal, [appellee] would not be entitled to recover his attorneys' fees." By agreement, the parties submitted the issues regarding attorney's fees to the trial court, and Aztec and glendonTodd do not challenge the trial court's findings regarding the amount of fees. Their only complaint is that any award of fees is improper if Prevett is not the prevailing party on his claims. Because we have concluded that the trial court did not err by rendering judgment for Prevett on the jury's answers to Questions 1, 2, 4, and 5 of the jury charge, we decide Aztec's and glendonTodd's fourth issue against them.

**3. Joint enterprise**

In their sixth issue, Aztec and glendonTodd challenge the legal and factual sufficiency of the evidence to support the jury's answer to Question 6 and the trial court's related rulings regarding whether Aztec and glendonTodd were engaged in a joint enterprise. Joint enterprise liability makes each party to the enterprise the agent of the other and responsible for the negligent

acts of the other. *Tex. Dep't of Transp. v. Able*, 35 S.W.3d 608, 613 (Tex. 2000). The elements of a joint enterprise are (1) an agreement, express or implied, among the members of the group; (2) a common purpose to be carried out by the group; (3) a community of pecuniary interest in that purpose among the members; and (4) an equal right to a voice in the direction of the enterprise, which gives an equal right of control. *Id.* (quoting RESTATEMENT (SECOND) OF TORTS § 491 cmt. c). As we explained in *David L. Smith & Associates, L.L.P. v. Stealth Detection, Inc.*, 327 S.W.3d 873, 878 (Tex. App.—Dallas 2010, no pet.), "[t]he theory of joint enterprise imputes liability to one who, although he did no wrong, is so closely connected to the wrongdoer that it justifies the imposition of vicarious liability."

Aztec and glendonTodd argue that joint enterprise liability is applicable only in tort, and Prevett neither pleaded nor obtained jury findings on any tort theory of recovery. Prevett responds that although joint enterprise "originat[ed]" in tort law, "there is nothing inherent to the required elements of joint enterprise that preclude its application to other fields of law," and there is at least one Texas appellate court that has applied joint enterprise liability in a breach of contract case, in *Seureau v. ExxonMobil Corp.*, 274 S.W.3d 206, 222 (Tex. App.—Houston [14th Dist.] 2008, no pet.). In *Seureau*, however, the court noted, "For the purposes of this appeal, we will assume, without deciding, that the theory of joint enterprise extends beyond negligence claims to include the Seureaus' fraud and contract allegations." *Id.* at 218 n.9. Further, the court held that the evidence failed to demonstrate a joint enterprise by the defendants in any event, because there was "no agreement, common purpose, community of pecuniary interest, or equal right to control" with respect to the alleged enterprise. *Id.* at 221–23.

Similarly here, even if we were to apply the theory of joint enterprise to Prevett's claims, we conclude the evidence is legally and factually insufficient to support the jury's findings on the theory's elements. Prevett relies on the following evidence:

- There was an agreement between Aztec and glendonTodd because Aztec was a "portfolio company of glendonTodd";

- "[B]oth glendonTodd and Aztec shared the common purpose of making money";

- There is a community of pecuniary interest because "glendonTodd's primary business is ensuring the soundness of its operating companies such as Aztec," glendonTodd "only makes money when its portfolio companies like Aztec are sold," and "it is part of glendonTodd's job to ensure that Aztec was a sound company"; and

- Aztec "was subject to a large degree of control from glendonTodd" but still had "some voice and right to be heard" in its own "operational aspects," establishing an equal right of control.

We first note that, as explained in *Seureau*, "the joint-enterprise elements must exist with respect to the *same* purpose and enterprise." *Seureau*, 274 S.W.3d at 222; *see also St. Joseph Hosp. v. Wolff*, 94 S.W.3d 513, 529 (Tex. 2002) (if evidence shows several possible purposes and concomitant projects or enterprises to accomplish them, charge must require jury to find joint enterprise elements "exist with respect to the *same* concomitant purpose and enterprise"). The enterprise described in Question 6 of the jury charge was "[w]ith regard to services provided by Nick Prevett, and the failure to pay for those services." There is no evidence that glendonTodd had any role in whether or not Prevett provided services to Aztec after February 21, 2015, or was paid for those services. The only evidence is that Boone, the chief executive officer of Aztec, controlled Aztec's hiring and firing of personnel. *See Omega Contracting, Inc. v. Torres*, 191 S.W.3d 828, 851 (Tex. App.—Fort Worth 2006, no pet.) ("The critical inquiry in analyzing the equal right of control element is whether the defendant charged with joint enterprise liability had the right to control the tortfeasor at the time of the tortious conduct." [internal quotations omitted]).

More broadly, Mary Louise Hatcher, the Chief Financial Officer of glendonTodd, testified that glendonTodd has no ownership interest in Aztec, and would benefit financially only if Aztec was eventually sold after having "done well." Hatcher explained:

Q.     So how does GlendonTodd—in managing portfolio companies, how does GlendonTodd Capital make its money?

–11–

A.    By making investments, sponsoring investments in operating companies. And, ultimately, when those companies are sold and if they have done well, then GlendonTodd may make some money.

Q.    Does GlendonTodd make—if the company—If the underlying portfolio companies make money, have a return ongoing but they are not sold, does GlendonTodd profit from that?

A.    No, it does not.

There was some evidence that Aztec and glendonTodd shared common officers. Hatcher testified that for one year beginning in August 2013, she served as Aztec's "Interim Chief Financial Officer." She did so under a written contract that was admitted into evidence at trial. The contract expressly provided that Hatcher "shall have no authority to commit or obligate Aztec in any manner and shall not hold herself out to third parties as being capable of doing so."

There was also evidence that Todd Furniss, the Chief Executive Officer and founder of glendonTodd, served as President of Aztec at one time. Furniss testified that he is not "involved at all with the operations of Aztec Systems, Inc.," but he knew Prevett and invited him to lunch with the chief executive officer of Aztec's parent company "[t]o talk about how to stimulate sales for Aztec in the United States." Furniss conceded that Aztec, its parent company, and the partnership that owned its parent were "[a]ll . . . pulling towards one goal," specifically, the "financial performance of Aztec" "[t]o the mutual benefit of all."

But there was no evidence "how, or whether, the monetary benefits of the enterprise were shared" between glendonTodd and Aztec, or that the two corporations had "an equal right to a voice in the direction of the enterprise, which gives an equal right of control," factors we relied on in *Stealth Detection* in concluding there was insufficient evidence of a joint enterprise. *See Stealth Detection*, 327 S.W.3d at 878–79; *see also St. Joseph Hosp.*, 94 S.W.3d at 531 (no community of pecuniary interest where no evidence that defendants agreed to share money received from operating alleged joint enterprise); *Burchinal v. PJ Trailers-Seminole Mgmt. Co., LLC*, 372

S.W.3d 200, 216 (Tex. App.—Texarkana 2012, no pet.) ("Evidence of shared officers, directors, employees, business addresses, and assets are insufficient to demonstrate joint enterprise where the other requirements are left unmet.").

GlendonTodd's possible profit from the eventual sale of Aztec is insufficient to establish a community of pecuniary interest. "Indirect, potential financial interests do not satisfy the test." *Omega Contracting, Inc.*, 191 S.W.3d at 850 (no community of pecuniary interest when revenue was divided based on each party's work); *see also Chesser v. LifeCare Mgmt. Servs., L.L.C.*, 356 S.W.3d 613, 626 (Tex. App.—Fort Worth 2011, pet. denied) ("mere existence of monetary benefits" to each member of alleged enterprise is insufficient; "there must be evidence that the monetary benefits were shared among the members of the enterprise without special or distinguishing characteristics").

In *Stealth Detection*, the appellants contended the trial court erred by not rendering Stealth Detection jointly and severally liable with a defaulting defendant, Stealth Industries, because the two entities were engaged in a joint enterprise. *Stealth Detection*, 327 S.W.3d at 878. There was evidence that Stealth Detection and Stealth Industries "had the same directors, officers, and employees; the same address and telephone number; the same logo; the same goals; and that they shared assets including ten trucks and $40,000 worth of computers." *Id.* In addition, "[t]he only bank account for the companies was in the name of Stealth Industries, which paid all the bills for Stealth Detection." *Id.* But because no evidence in the record showed "how, or whether, the monetary benefits of the enterprise were shared between Stealth Detection and Stealth Industries," or that the two corporations had "'an equal right to a voice in the direction of the enterprise, which gives an equal right of control,'" appellants failed to prove joint enterprise liability between the two corporations. *Id.* at 878–79 (quoting *Shoemaker v. Whistler's Estate*, 513 S.W.2d 10, 16–17 (Tex. 1974)).

As in *Stealth Detection*, there is no evidence that Aztec and glendonTodd had a community of pecuniary interest in a common purpose, and no evidence glendonTodd and Aztec had an equal right to a voice in the direction of the alleged enterprise. *See id.* Even if we were to conclude that joint enterprise theory applied to Prevett's contract claim, the evidence is legally and factually insufficient to support the jury's answer to Question 6. We decide appellants' sixth issue in glendonTodd's favor.

## CONCLUSION

We reverse the trial court's judgment as to glendonTodd and render judgment that Prevett take nothing from glendonTodd. In all other respects, we affirm the trial court's judgment.

/Leslie Osborne/
LESLIE OSBORNE
JUSTICE

180183F.P05



## Court of Appeals
## Fifth District of Texas at Dallas

## JUDGMENT

AZTEC SYSTEMS, INC. AND
GLENDONTODD CAPITAL, LLC,
Appellants

No. 05-18-00183-CV     V.

NICK PREVETT, Appellee

On Appeal from the 44th Judicial District
Court, Dallas County, Texas
Trial Court Cause No. DC-15-13630.
Opinion delivered by Justice Osborne;
Justices Myers and Nowell, participating.

In accordance with this Court's opinion of this date, the judgment of the trial court is **AFFIRMED** in part and **REVERSED** in part. We **REVERSE** that portion of the trial court's judgment awarding appellee Nick Prevett actual damages, prejudgment interest, and costs from appellant glendonTodd Capital, LLC. We **RENDER** judgment that appellee Nick Prevett take nothing from appellant glendonTodd Capital, LLC. In all other respects, the trial court's judgment is **AFFIRMED**.

It is **ORDERED** that appellee Nick Prevett recover recover his costs of this appeal and the full amount of the trial court's judgment from appellant Aztec Systems, Inc.

Judgment entered this 29th day of March, 2019.